2012 Ark. App. 261

**Robert Ryan SIPE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–677.**

Court of Appeals of Arkansas.

April 18, 2012.

Tylar C.M. Tapp III, Tapp Law Firm, Hot Springs, for Appellant.

Dustin McDaniel, Attorney General, Valerie Glover Fortner, Assistant Attorney General, Little Rock, for Appellee.

ROBERT J. GLADWIN, Judge.

Appellant Robert Ryan Sipe was convicted of manslaughter in Garland County Circuit Court on March 3, 2011, and sentenced to twenty years' imprisonment pursuant to a firearm enhancement for the shooting death of Brian Lumen. On appeal, he claims that the trial court failed to properly instruct the jury, erred in admitting and excluding evidence, and erred by denying his motion for directed verdict. We affirm.

Appellant testified that in the early morning hours of February 12, 2010, he awoke to the sound of his four-wheeler ATV being started and the engine revving. Appellant said that he looked out of his window and saw a man on his ATV. Appellant then got dressed, grabbed his handgun, removed the barricade from his front door, and went out on his porch to investigate. Appellant testified that he saw a man riding his ATV and when the man started coming toward him, appellant fired a warning shot. When the man kept coming, appellant shot him. Appellant also testified that the man pointed something at him, but that he did not know what the man was pointing. After shooting him, appellant went to the victim and discovered that it was Brian Lumen, a childhood friend. Appellant placed two blankets on top of Lumen's body and waited for police to arrive.

According to appellant, he and Lumen had been estranged for the last five years due to Lumen's "destructive behavior." Appellant claimed that when he had tried to rekindle his friendship with Lumen in 2009, he had to ask Lumen to leave his property because Lumen was "on drugs." Appellant testified that after that incident, things "began happening" at his house. He said that he found his two-year-old English Mastiff dead for no apparent reason. On another occasion, appellant saw Lumen driving a blue Camaro away from appellant's home, and when appellant got home, he found that his door had been kicked in and several things had been stolen, including the keys to his ATV. A few days later, he heard glass breaking and upon investigation found that two tractor tires had been slashed. Appellant claimed that his vehicle was stolen. Further, he stated that Lumen was driving a moped around in circles on appellant's "back forty" on one occasion, and on another, Lumen shot a gun while driving around appellant's property on the moped. Appellant testified that he began barricading his front door and argued that he was justified in shooting the victim because he feared for his life. Appellant noted that there had been no more incidents at his home since Lumen was killed.

Arkansas State Medical Examiner Daniel Dye testified that the victim was shot in

the back—"left flank." Garland County Sheriff's Officer Matt Avant testified that when he arrived at appellant's home, he found appellant on his front porch, calm but "partially ⌊₃incoherent." When pressed about his conclusions on incoherence, Officer Avant explained that appellant had difficulty answering basic questions, had slurred speech and red glassy eyes, kept repeating himself, stumbled several times, and stared blankly. Officer Avant testified that appellant told him that he had taken "a few" Xanax before going to bed.

Appellant testified that it was dark and that he could not see who was on the ATV. Officer Avant testified that when he arrived, appellant's home lights, front-porch light, and a permanent Entergy night light were burning. Appellant testified that the victim was headed straight for him. Officers testified that the tire tracks in the snow showed that the ATV was backed out of the driveway in a wide semi-circle and that the ATV was not facing the house, but backed up to about ten feet from the porch.

Prior to trial, the trial court granted the State's motions in limine, which precluded any evidence concerning the victim's prior gunshot wound to the buttocks, the victim's prior bad acts and convictions, and the toxicology report showing that the victim was under the influence of methamphetamine at the time he was shot. The trial court denied appellant's motion in limine and allowed evidence that appellant was "under the influence" when he had made police reports regarding incidents at and around his home.

At the close of the State's case, appellant moved for a directed verdict, arguing that the evidence supported his claim that he acted in self defense. This motion was denied. At the close of the defense's case, the State called several rebuttal witnesses and appellant then renewed his motion for a directed verdict. This motion was denied.

⌊₄After deliberating, the jury concluded that appellant was guilty of manslaughter, a lesser-included offense to second-degree murder, which was appellant's original charge. Appellant moved for judgment notwithstanding the verdict, claiming that there had been no true showing of appellant's intent at the time of the shooting. This motion was denied. Appellant was then sentenced to ten years' imprisonment for manslaughter, with a consecutive term of ten years for the firearm enhancement. A timely notice of appeal was filed, and this appeal followed.

### I. *Substantial Evidence*

■ In his third point on appeal, appellant claims that the State failed to meet its burden of proof on the lesser-included offense of manslaughter and that the trial court erred in denying his motions for directed verdict and for judgment notwithstanding the verdict. An argument contesting the denial of a directed verdict is a challenge to the sufficiency of the evidence, and protection of appellant's double-jeopardy rights requires that we address such an argument prior to addressing other asserted trial errors. *Sullivan v. State,* 2012 Ark. 74, 386 S.W.3d 507. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *Id.* This court does not weigh the evidence

presented at trial, as that is a matter for the fact-finder; nor do we assess the credibility of the witnesses. *Beare v. State,* 2010 Ark. App. 544, 2010 WL 2606525. In assessing the weight of the evidence, a jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances. *Reams v. State,* 45 Ark.App. 7, 870 S.W.2d 404 (1994). Appellant argues that the evidence, considered in the light most favorable to the State, does not rise to the level of manslaughter.

■ A person commits manslaughter if he recklessly causes the death of another person. Ark.Code Ann. § 5–10–104(a)(3) (Supp.2011). A person acts "recklessly" when he consciously disregards a substantial and unjustifiable risk that circumstances exist or the result will occur. Ark. Code Ann. § 5–2–202(3)(A) (Repl.2006). The risk must be a gross deviation from the standard of care that a reasonable person would observe in the actor's situation. Ark.Code Ann. § 5–2–202(3)(B). The defense of person and property from harm, injury, or loss is a fundamental right when someone is unlawfully entering or attempting to enter or intrude into the home. Ark.Code Ann. § 5–2–620(a) (Repl. 2006). Moreover, appellant cites Arkansas Code Annotated section 5–2–620, and claims that it is perfectly normal and acceptable to use force to defend his person and property.

■ Appellant argues that he is not guilty of manslaughter, which is defined as recklessly causing the death of another person. *See* Ark.Code Ann. § 5–10–104(a)(3). Appellant maintains that it cannot be deemed reckless for him to stand his ground and defend his person and property from someone apparently trying to steal his ATV and advancing on him in that ATV in the middle of the night, espe-

cially in light of the previous incidents involving his car being stolen and the burglary of his house.

The State contends that appellant failed to preserve this issue for appeal. When appellant moved for directed verdict at the close of the State's case, he argued that the evidence supported his affirmative defense and made no attempt to refute the specific elements of second-degree murder or its lesser-included offenses.

■ Arkansas Rule of Criminal Procedure 33.1 (2011) requires that a motion for directed verdict state the specific grounds on which the movant is relying. The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. Ark. R.Crim. P. 33.1(c). A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. *Id.* A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. *Id.; see also Williamson v. State,* 2009 Ark. 568, 350 S.W.3d 787. Accordingly, appellant's argument is not preserved.

## II. *Jury Instructions*

■ Appellant contends that the trial court committed three errors relating to the jury instructions: (1) refusing to give model instruction 706—use of deadly physical force in defense of premises; (2) refusing to apply to the lesser-included offense of manslaughter model instruction 705—use of deadly physical force in defense of a person; and (3) refusing to advise the jury that appellant had no duty to retreat un-

der model instruction 705. A circuit court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *Jones v. State,* 2012 Ark. 38, 388 S.W.3d 411.

The instruction submitted to the jury and made applicable to the second-degree murder charge, entitled AMI Crim.2d 705, is based on Arkansas Code Annotated section 5–2–607 (Supp.2011), which states that a person is justified in using deadly physical force upon another person if he reasonably believes that the other person is (1) committing or about to commit a felony involving force or violence; (2) using or about to use unlawful deadly physical force; or (3) imminently endangering the person's life. Ark.Code Ann. § 5–2–607(a)(1)–(3). A person may not use deadly physical force in self-defense if the person knows that he can avoid it by retreating. Ark.Code Ann. § 5–2–607(b)(1)(A). However, a person is not required to retreat if he is in his own dwelling or on the curtilage surrounding his dwelling. Ark. Code Ann. § 5–2–607(b)(1)(B)(i).

The instruction submitted to the jury entitled AMI Crim.2d 705 states as follows:

> Robert Ryan Sipe asserts as a defense to the charge of murder in the second degree that deadly physical force was necessary to defend himself. This is a defense only if:

> First: Robert Ryan Sipe reasonably believed that Brian Lumen was committing or about to commit battery in the second degree, a[sic] felony of force or violence; or that Robert Ryan Sipe reasonably believed that Brian Lumen was using or was about to use unlawful deadly physical force; and

> Second: Robert Ryan Sipe only used such force as he reasonably believed to be necessary.

> Robert Ryan Sipe, in asserting this defense, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of murder in the second degree, then you must find him not guilty.

Appellant contends that this instruction should have also been made applicable to the manslaughter charge. Further, he claims that the trial court erred in refusing to include in the instruction the language in the statute that a person need not retreat if they are on their curtilage.

Appellant further contends that the trial court erred in failing to submit the proffered model jury instruction AMI Crim.2d 706, pertaining to deadly physical force used in defense of property. Instruction 706 is modeled after Arkansas Code Annotated section 5–2–608 (Supp.2011), which provides that a person in lawful possession or control of premises is justified in using deadly physical force upon another person when and to the extent that he reasonably believes the use of deadly physical force is necessary (1) to prevent or terminate the commission or attempted commission of a criminal trespass by the other person in or upon the premises; (2) use of deadly physical force is authorized by § 5–2–607; or (3) he reasonably believes the use of deadly physical force is necessary to prevent the commission of arson or burglary by a trespasser. Ark.Code Ann. § 5–2–608(a)–(b). Appellant argues that, in light of the history of break-ins and thefts, his actions when confronted by the intruder driving his ATV were justified.

■■■ The State claims that there was no abuse of discretion by the trial court in limiting the jury instructions. *Jones, supra.* Just because a proffered jury instruction may be a correct statement of the law does not mean that a trial court

must give the proffered instruction to the jury. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). "Non-model instructions are to be given only when the trial court finds that the model instructions do not accurately state the law or do not contain a necessary instruction." *Bond v. State*, 374 Ark. 332, 340, 288 S.W.3d 206, 212 (2008). To preserve an objection to an instruction for appeal, the appellant must proffer the proposed instruction to the trial judge, include it in the record on appeal, and abstract it to enable the appellate court to consider it. *Robertson v. State*, 2009 Ark. 430, 347 S.W.3d 460.

 Here, appellant sought to instruct the jury with a version of AMI Crim.2d 705 that included language not found in the model instructions—that appellant was not required to retreat from the curtilage of his house. However, appellant did not proffer the version of that instruction that he wanted the trial court to give, which precludes appellate review. *Id.* Also, because no objection or request was made regarding the applicability of 705 to the lesser-included offense of manslaughter, the trial court's refusal is precluded from our review. *Bridges v. State*, 327 Ark. 392, 938 S.W.2d 561 (1997).

 Finally, the State contends, and we agree, that the trial court's decision to deny use of AMI Crim.2d 706 pertaining to justification of deadly force to defend premises was correct. The State objected to appellant's submission of 706 because the instruction pertained to situations where the defendant reasonably believes that the use of deadly force is necessary to prevent a trespasser from committing arson or burglary. The trial court agreed that there was no basis in the evidence that the victim intended to commit arson or burglary and thus denied the use of 706, but allowed appellant to proffer it. When the evidence does not support the giving of an instruction, it is not error to refuse it. *Waller v. State*, 2010 Ark. App. 56, 2010 WL 183505. Neither party addressed the applicability of subsection (b) of AMI Crim.2d 706, which states that the use of deadly force is lawful if the defendant reasonably believes that another person is committing or about to commit a felony with force of violence, or is using or about to use unlawful deadly force. Appellant's failure to raise that issue below precludes appellate review. *Bridges, supra.*

## III. *Evidentiary Rulings*

 Rule 401 of the Arkansas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2011). Arkansas Rule of Evidence 402 further provides that "[e]vidence which is not relevant is not admissible." Ark. R. Evid. 402 (2011). Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403 (2011). A circuit court's ruling on relevancy and matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court, and will not be reversed absent an abuse of that discretion. *Jones v. State*, 2011 Ark. App. 324, 384 S.W.3d 22. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.* Moreover, an appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *Id.*

Appellant challenges several rulings made prior to trial pursuant to motions in

limine made by both appellant and the State. Appellant sought to place into evidence as part of his justification defense the fact that the victim, Mr. Lumen, had a prior gunshot wound, had been convicted several times for drug offenses and offenses involving violence, and Lumen's toxicology report, which showed that at the time of his death, Lumen was under the influence of amphetamines, opiates, hydrocodone, and several other drugs. The trial court granted the State's motion in limine prohibiting the introduction of this evidence. Also, appellant had made several police reports related to thefts and trespassing that occurred prior to the night of the shooting. In these reports, the police officers noted that they believed appellant was under the influence. The trial court allowed the officers to so testify, over appellant's motion in limine and objection. Appellant contends that these rulings had a prejudicial effect in light of the trial court's exclusion of similar evidence about the victim.

Appellant further argues that all of the evidence he sought to introduce would be relevant for a jury to consider in determining whether the State could overcome his affirmative defense of justification and defense of his person and property. He cites *Brockwell v. State,* 260 Ark. 807, 545 S.W.2d 60 (1976), for the proposition that a defendant is entitled to have the jury consider all the conduct of the decedent in order to determine whether there was a necessity for the defendant to act in defense of his household. Appellant contends that whether the victim was under the influence and had a prior history of violence would have been relevant for the jury's consideration of whether appellant had a reasonable fear that he or his property were in danger.

Finally, appellant argues that *Jones v. State,* 340 Ark. 390, 10 S.W.3d 449 (2000), while affirming the trial court's denial of evidence related to the victim's drug use, reaffirms that there must be some relationship between the drug usage and the issues in the case. Here, appellant contends that there was a relationship and that the evidence of the victim's drug usage should have been admitted.

When the victim was autopsied, a .22–caliber bullet was found in his buttock. It was evident from the fibrous tissue surrounding the bullet that the wound was fairly old. Appellant sought to introduce evidence of the bullet wound, arguing that it was relevant because it showed the victim's propensity toward violence and, thus, supported his defense that the victim had threatened him the night of the shooting. The State rebutted his premise by explaining that the wound was accidentally self-inflicted and not the result of violence. The State argued, and the trial judge agreed, that the wound was completely irrelevant and overly prejudicial under 401 and 403; particularly in light of the fact that there was absolutely no evidence that the wound occurred from a violent altercation.

Appellant next sought to introduce prior bad acts of the victim, again in order to show that the victim had a propensity toward violence. Appellant argued that he and the victim had been friends, knew each other's history, and, because he suspected the victim of having been involved in other harassment in previous weeks, that the information was relevant. The State moved to limit such evidence, arguing that the victim's non-violent criminal past was completely irrelevant under 401 and more prejudicial than probative under 403. The trial court granted the motion, holding that the evidence's relevance rested on appellant's state of mind at the time he fired the weapon and would only potentially be admissible if appellant testified.

When the victim's autopsy was performed, methamphetamine and opiates were found in both his blood and urine. Appellant sought to introduce the report in order to show the victim's state of mind at the time of the altercation. The State successfully moved to limit the evidence, arguing that it was not only prejudicial but also completely irrelevant unless appellant knew at the time of the shooting that the victim was intoxicated. Regardless, in cross-examination, appellant stated that the victim "was amped up on meth and hydrocodones ... all kinds of drugs." Therefore, despite the trial court's instructions not to mention the intoxication, appellant brought it to the jury's attention without objection from the State.

In the context of self-defense, the victim's alleged propensity toward violence, his criminal background, and his intoxication at the time of death could only possibly be relevant if appellant both knew about those factors and knew who he was defending himself against when he fired his weapon. *Britt v. State*, 7 Ark.App. 156, 161, 645 S.W.2d 699, 702 (1983) (holding that testimony of specific acts unknown to a defendant are not directly probative of his belief that he is about to encounter unlawful deadly force). Here, appellant admitted that he fired his gun without knowing who was riding toward him. Therefore, because appellant did not know upon whom he was shooting, he could not have considered the victim's background and state of mind before firing his weapon. Accordingly, such evidence would only have served to prejudice the victim. Moreover, appellant was not prejudiced by the trial court's ruling regarding the victim's intoxication, as it was mentioned without objection during questioning. *See Jones, supra.* For all these reasons, the evidence was inadmissible, and the trial court did not abuse its discretion in so limiting it.

Appellant finally suggests that it was unfair for the trial court to omit evidence of the victim's drug use but allow the jury to hear evidence of his own. Appellant wanted to use the reports he had made to police for his defense but wanted to prevent the State from being able to cross-examine the officers as to appellant's state of mind when those reports were made. The trial court granted appellant's motion, but warned, however, that if appellant opened the door to the evidence, the State would be free to use the evidence during cross-examination. The trial court agreed that law enforcement would be free to "testify as to the physical demeanor of the person reporting the crime" regardless of whether field-sobriety tests were performed to substantiate that conclusion. When appellant testified regarding the thefts and vandalized property, he suggested that the police failed to take the crimes and his fear for his safety seriously by not promptly responding or investigating the crimes to his satisfaction. After appellant thus opened the door, the State was free to refute his allegations by calling the officers who responded to his 911–theft calls, as appellant had made his intoxication relevant to refute his allegations about the police.

Affirmed.

VAUGHT, C.J., and WYNNE, J., agree.