2014 Ark. App. 412

**Danny Wayne STALNAKER, Appellant**

v.

**STATE of Arkansas.**

**No. CR–13–1103.**

Court of Appeals of Arkansas.

June 18, 2014.

Louis L. Loyd, Malvern, for appellant.

Dustin McDaniel, Att'y Gen., by: Pamela A. Rumpz, Ass't Att'y Gen., for appellee.

KENNETH S. HIXSON, Judge.

This appeal involves the application of an appropriate self-defense jury instruction in a murder trial. Appellant Danny Stalnaker was charged with the first-degree murder of Chris Patterson, but a Saline County jury ultimately convicted him of second-degree murder.[1] Patterson died after appellant grabbed an unloaded .410 shotgun by the barrel and swung it at Patterson, striking him in the head with the gunstock and causing blunt-force trauma to the brain. Appellant claimed that he was justified in defending himself from what he believed was Patterson's threat of physical force. Appellant requested that the jury be instructed on the justifiable use of "physical force" in defense of a

person, as found in Arkansas Model Jury Instruction–Criminal 704 (AMCI 704). The trial court refused AMCI 704 and instead offered to give AMCI 705, entitled "Justification—Deadly Physical Force." Appellant rejected the trial court's offer to give the "deadly physical force" instruction, asserting that the evidence would not support the required elements of that defense, and withdrew his request that the jury be instructed on a justification defense at all. Appellant proffered AMCI 704.

The issue on appeal is whether the trial judge abused his discretion in refusing appellant's proffered justification-defense jury instruction, warranting a reversal and remand for a new trial on the murder charge. We disagree that an abuse of discretion has been shown, and we affirm.

We review a trial court's decision regarding jury instructions under an abuse-of-discretion standard. *Hickman v. State,* 372 Ark. 438, 277 S.W.3d 217 (2008); *Taylor v. State,* 2013 Ark. App. 146, 2013 WL 765229. There is no error in refusing to give a jury instruction where there is no basis in the evidence to support the giving of the instruction. *Purifoy v. State,* 307 Ark. 482, 822 S.W.2d 374 (1991). A party is entitled to a jury instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Humphrey v. State,* 332 Ark. 398, 966 S.W.2d 213 (1998). It is the trial court's responsibility to give wholly correct instructions. *Elmore v. State,* 13 Ark.App. 221, 682 S.W.2d 758 (1985). In determining whether the trial court erred in refusing an instruction in a criminal trial, the

1. Appellant was also convicted of being a felon in possession of a firearm, which he does not challenge on appeal.

test is whether the omission infects the entire trial such that the resulting conviction violates due process. *Henderson v. State,* 349 Ark. 701, 80 S.W.3d 374 (2002).

Here, the applicable statutes and model jury instructions demonstrated that only the "deadly physical force" model jury instruction was appropriate, if any. Thus, the trial court did not abuse its discretion in refusing AMCI 704.

We review the evidence in greater detail for purposes of deciding the appropriate self-defense instruction and whether there was an abuse of discretion. Appellant and several others were spending the day at a camping area along the Saline River on June 16, 2012. Appellant, a retired ironworker in his mid-sixties, had known thirty-five-year-old Chris Patterson for about ten years. Appellant acted as an unofficial caretaker for the camping area, which became known as "Danno's Camp," and considered himself a friend to most of the people who were there that day, including Patterson. There was a .410 shotgun that belonged to the campsite, and it was used by people visiting the campsite, including Patterson, to shoot snakes. On this particular day, the shotgun was loaded and propped up against a nearby tree.

Patterson had been drinking whiskey all day and was very intoxicated.[2] He was a large man—6′2″ tall and 255 pounds—and had been intermittently threatening over the course of the day to "kick" or "whoop" various people's "ass." As people left the campsite, appellant asked them to take Patterson with them, but they declined. As the day wore on, Patterson became progressively more annoying, verbally abusive, obnoxious, and offensive to everyone.

At around 8:30–9:00 p.m., appellant approached Patterson, who was sitting at the picnic table, and asked him to leave. As appellant picked up the campsite's shotgun to remove the shell, Patterson asked appellant, "What are you gonna do? Kill me?" Appellant said that he told Patterson that he did not want to kill him but just wanted him to leave. Appellant testified that Patterson replied, "You SOB, I will kill you" and stood up, taking a more aggressive approach, and "came at" appellant, acting like he was going to hit him. Patterson was unarmed. This was when appellant took the shotgun by the barrel and swung it like a bat at Patterson, hitting him in the head.

In contrast, a woman who was sitting at the picnic table testified that appellant told Patterson that he did not want to kill him, but he would show Patterson what he was going to do and struck Patterson while he remained sitting at the picnic table.

The stock of the shotgun made contact with Patterson's head on the upper-left side. Witnesses heard the loud sound of the gun striking Patterson's head. Appellant said that he reacted out of fear, but he did not intend to kill Patterson or think that Patterson would die from hitting him in the head. Appellant said that he did not realize that he hit Patterson so hard, although he acknowledged that the gun was heavy and that he (appellant) was strong. Photographs of the shotgun were submitted as evidence, and the jury was urged to view and hold the actual shotgun during deliberations.

Patterson fell to the ground by the picnic table, moaning and bleeding from his head. He was initially conscious and complained that his head hurt really badly, but he wanted to stay on the ground until his

---

2. A toxicology report indicated that Patterson's blood-alcohol content was approximately .34, more than four times the legal limit to drive in Arkansas. Patterson also tested positive for amphetamines and marijuana.

wife came to the campsite. Although appellant and a couple other people stayed to help wash off Patterson's head wound, they left the camp and left Patterson there, expecting his wife to pick him up when her work shift ended. No one called 911 for emergency assistance. Photographs of the blood on the ground next to the picnic table were entered into evidence.

When Patterson's wife arrived later that night, she found him on the ground by the picnic table and called 911 for emergency assistance. Patterson was transported to Saline Memorial Hospital and then to UAMS due to the severity of his injuries, but he died the following night as a result of the blunt-force trauma to his head.

The medical examiner described this as a significant, life-threatening injury, noting that Patterson was hit hard enough for his brain to impact the interior right side of his skull, the opposite side of where he had been struck. The medical examiner classified this as a homicide. Patterson sustained an approximately two-inch laceration, abrasions, and a fractured skull. This blunt-force trauma caused bleeding, swelling, and necrosis in his brain. The medical examiner found no evidence of defensive wounds. Autopsy photographs showing close-up views of Patterson's head wounds were submitted into evidence for the jury to consider.

Appellant was charged with first-degree murder, and the jury was instructed on both first—and second-degree murder.[3] The jury concluded that appellant was guilty of second-degree murder, finding that appellant knowingly caused Patterson's death, or that appellant acted with purpose to cause Patterson serious physical injury and caused his death.

Appellant argues that the trial judge improperly interfered with and denied the jury the opportunity to make a factual determination as to whether he committed second-degree murder in self defense. Appellant cites to *Humphrey v. State*, 332 Ark. 398, 966 S.W.2d 213 (1998), where our supreme court held that appellate review requires that we consider whether there was any evidence to support the existence of a defense, and if there is, then a justification instruction must be submitted.

Appellant did not believe that an AMCI 705 instruction was appropriate because appellant did not believe that Patterson was going to use deadly physical force against him. Appellant was incorrect that there is a requirement that the defendant, in every case using AMCI 705, reasonably believe that the victim was about to use unlawful deadly physical force. The model jury instruction lists as an applicable alternative that the defendant reasonably believe that the victim was about to commit a felony involving force or violence. Hence, the facts support an AMCI 705 instruction. The prosecutor contended, and the trial judge agreed, that the focus of the applicable statutes and model jury instructions is on the quantum of the physical force used by the defendant, not the force expected by the defendant from the victim. The model-jury instructions, and the statutes upon which they rest, support the trial judge's conclusion to offer only the "deadly physical force" justification instruction.

"Physical Force" Instruction 704 is based upon Arkansas Code Annotated section 5–2–606 (Repl.2013), which provides in pertinent part that:

> (a) (1) A person is justified in using *physical force* upon another person to defend himself or herself or a third per-

---

3. Appellant requested, but was denied, jury instructions on negligent homicide and man- slaughter. Those rulings are not challenged on appeal.

son from what the person reasonably believes to be the use or imminent use of unlawful physical force by that other person, and the person may use a degree of force that he or she reasonably believes to be necessary.

(2) However, the *person may not use deadly physical force* except as provided in § 5-2-607.

(Emphasis added.)

"Physical force" is defined in Arkansas Code Annotated section 5-2-601(6) as "any bodily impact, restraint, or confinement" or "the threat of any bodily impact, restraint, or confinement." *See also Jones v. State,* 1 Ark.App. 318, 615 S.W.2d 388 (1981). "Deadly physical force" is defined by Arkansas Code Annotated section 5-2-601(2) (Repl.2013) as "physical force that under the circumstances in which it is used is *readily capable of causing death or serious physical injury.*" (Emphasis added.) The Arkansas Criminal Code defines "serious physical injury" as "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ." Ark.Code Ann. § 5-1-102(21) (Repl.2013).

The pertinent inquiry is whether the appellant used physical force that under these circumstances was readily capable of causing a physical injury that created a substantial risk of death or protracted impairment of health. That answer is unequivocally "yes." Clearly, the appellant used "deadly physical force."

There are statutory limits to the use of "deadly physical force," recited in Arkansas Code Annotated section 5-2-607 (Repl. 2013), which provides in pertinent part that:

. (a) A person is justified in using *deadly physical force* upon another person if the person reasonably believes that the other person is:

(1) Committing or about to commit a felony involving force or violence;

(2) Using or about to use unlawful deadly physical force; or

(3) Imminently endangering the person's life[.]

(b) A person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly force with complete safety:

(1)(A) By retreating.

(Emphasis added.)

In this instance, the State and the trial judge were in support of instructing the jury on the only justification defense that would be permitted by statute, i.e., the use of deadly physical force. Appellant refused it, apparently conceding that he could not establish a valid justification defense in using deadly physical force. That was a trial strategy by defense counsel.

The physical force used here caused a severe, and ultimately fatal, open head wound and skull fracture—a blunt-force trauma of considerable magnitude that falls squarely within the statutory definition of "deadly physical force." *Walton v. State,* 53 Ark.App. 18, 918 S.W.2d 192 (1996) (lesser "physical injury" justification instruction not warranted regarding first-degree battery where Walton stabbed victim with a knife, which could only be considered deadly physical force). *See also Jones v. State,* 292 Ark. 183, 729 S.W.2d 10 (1987) (reciting examples of deadly instruments by virtue of the circumstances of use); *Elmore, supra* (affirming trial court's refusal to give only the "physical force" justification instruction in attempted-capital murder trial where evidence supported giving of both "physical force" and "deadly physical force" instructions to

fully inform the jury of the law on self defense).

We hold that the trial court did not abuse its discretion in refusing to instruct the jury on only AMCI 704 because, by statute, only AMCI 705 could potentially apply. When the evidence does not support the giving of a particular instruction, it is not error to refuse it. |₉ *Sipe v. State*, 2012 Ark. App. 261, 404 S.W.3d 164. The refusal of AMCI 704 did not infect the entire trial such that appellant's due process rights were violated. *See Henderson, supra.* Appellant fails to demonstrate an abuse of discretion.

We affirm.

PITTMAN and WOOD, JJ., agree.