

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–13–925

| | | |
|---|---|---|
| ROBERT TURNER | | **Opinion Delivered** August 27, 2014 |
| | APPELLANT | |
| | | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. CR–2012-67] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE RANDY F. PHILHOURS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Robert Turner was convicted by a jury of two counts of aggravated robbery and one count of residential burglary. He contends on appeal that the trial court abused its discretion by admitting a portion of a 911 dispatch log into evidence over his relevancy objection. The log reflects telephone calls about a "shooting and robbery . . . in house" in Gilmore, Arkansas, the night of February 8, 2011. The following information was typed into the log by a dispatcher at the Crittenden County Sheriff's Office at the time he received the calls:

> Someone shot, Darren Chance, 266 Menesha, Gilmore . . . , Robert Turner, 30Y, B/M, 140, 5'06', white/Chev/Impala two door car headed toward Lepanto . . . . Tyronza notified to be on lookout for the vehicle and the Robert Turner subject that he was in a white Chevrolet poss in route back to Lepanto. She called back and wanted to know if the Turner subject was a Sr or Jr. He was the Jr.

We find no abuse of discretion in the trial court's decision to allow the admission of this evidence.

Before turning to the merits of this case, we make the following observations about

SLIP OPINION

the briefs before us. The State's brief includes a supplemental addendum reproducing the page of the dispatch log at issue as well as a supplemental abstract of testimony by three witnesses: victim Darren Chance, a second victim, and a law-enforcement officer who conducted a photo lineup. These items are essential to our understanding of the issues on appeal, and appellant's abstract and addendum is deficient because it lacks them. *See* Ark. Sup. Ct. R. 4–2(a)(5), (8) (2013). Furthermore, appellant's statement of the case is barely sufficient to assist us in understanding the nature of the case and general fact situation, and it lacks "page references to the abstract or addendum or both." Ark. Sup. Ct. R. 4–2(a)(6) (2013). The deficiencies of appellant's brief are such that, were it not for supplementation by the State, we would have been unable to reach the merits of this appeal and would have ordered rebriefing. *See* Ark. Sup. Ct. R. 4–2(b)(3) (2013).

*Admission of the Dispatch Log into Evidence*

Matters pertaining to the admissibility of evidence and rulings on relevancy are left to the trial court's sound discretion. *Sipes v. State*, 2012 Ark. App. 261, 404 S.W.3d 164. We will not reverse a trial court's evidentiary ruling absent an abuse of that discretion and a showing of prejudice. *Id*. Abuse of discretion is a high threshold that does not simply require error in the trial court's decision, but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id*.

As a general matter, all relevant evidence is admissible. Ark. R. Evid. 402 (2013). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

SLIP OPINION

would be without the evidence." Ark. R. Evid. 401 (2013). Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, . . . , or needless presentation of cumulative evidence." Ark. R. Evid. 403 (2013). The State, however, is entitled to prove its case as conclusively as it can. *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249. Merely cumulative evidence is not prejudicial, and corroborating evidence may withstand Rule 403's balancing test. *See Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007) (finding no abuse of trial court's discretion in admission of 911 calls despite Rule 403 claims that they were cumulative to other evidence); *Anderson v. State*, 93 Ark. App. 454, 459, 220 S.W.3d 225, 230 (2005) (finding no abuse of discretion in admission of letters that tended to corroborate the victim's testimony).

Appellant's objection to the dispatch log was initially sustained at trial, but the document was subsequently admitted after the State presented other evidence. The State first proffered the log during the testimony of Jeffrey Morris, the dispatcher who created it; he stated that he took the two calls and that the log was kept in the ordinary course of business at the sheriff's office. Appellant's counsel, objecting that the log should not be admitted into evidence, asked to voir dire Morris to show that he lacked knowledge of the truth of "anything in this log" or the source of the information at issue. The following colloquy occurred:

> COUNSEL: This case hinges on the State's ability to identify Robert Turner. This document is going to come in on official letterhead. I think it is hearsay and prejudicial.
>
> THE STATE: We have had testimony that two calls were made, the information given to the Sheriff's office about who it was. And we have the dispatcher

3

who received the calls.

> THE COURT: Yes. *But so far his name has not come up at all. And no one has said they knew or that they could tell who it was.*

(Emphasis added.)

Counsel then conducted voir dire of Morris, who said that he received the information from the phone conversation and had no independent way to verify its accuracy. Morris testified, "I was just repeating what someone else told me. Any action I would have taken would have been the same regardless of the names I was told." Counsel again objected:

> I am asking the court to exclude this document on the basis that it is hearsay with no evidence of reliability, or alternatively to exclude a portion of the document that includes my client's name under the argument that *it is prejudicial.* The nature of the offense is that Mr. Turner wasn't there. There has been no proof that anybody even at the scene can identify Mr. Turner, and I want to avoid the jury getting a document—a Crittenden County official document that has his name on there twice with no indicia of reliability or truthfulness attached to it.

(Emphasis added.) The circuit court, expressing concern about "the highly prejudicial effect of Mr. Turner's name being put in there at this point," again sustained counsel's objection. The court ruled that "right now, the prejudicial effect outweighs the probative value of only mentioning his name."

The State withdrew its proffer at this point in its case and presented other evidence, including the testimony of Officer Allen Thomas and victims Darren Chance and Deondra Jackson.[1] Chance testified that when the robbers were in his house and when the shorter one

---

[1]As noted earlier in our opinion, the testimony of these witnesses appears only in the State's supplemental abstract. Appellant's abstract refers to this portion of the record as "immaterial . . . omitted pursuant to the Rules."

was "checking and searching" him, he began forming an opinion that the shorter one was appellant. Chance explained, "My opinion was based on his gestures. I've been around him for a while and know his gestures. I also remember seeing him with the same gun." Chance testified that in a statement at the sheriff's office, he again identified appellant as the shorter robber. Chance explained that the two of them lived in the same town and that he had worked on appellant's car. Regarding events that preceded the robbery, Chance testified:

> [Appellant's] uncle is Chester Turner. I saw him just about every day within the six months before the robbery. . . . I got cash that day because I got my income tax that day. I went to the post office and there was a letter in there about coming and picking up my money from the tax agency. Chester Turner was with me. We walked to the post office together. He was aware that I was picking up my income tax refund.

Chance said that just a few days before the robbery, he had seen appellant and his uncle in their car with a gun similar to the one the shorter robber subsequently used: a six-shot, brown-handled revolver in a "dark grayish . . . color like a blue steel."

Officer Allen Thomas testified that he conducted a six-photo lineup—directing Deondra Jackson to mark a photo only if he was 100% positive of his pick—and that Jackson wrote his initials on appellant's photo. Jackson testified that when the robbers left the crime scene,

> I followed the car the robbers had gotten in. . . . I figured that they still had the guns in the car. When they made a right going towards Jonesboro way, I caught up with them a little more. . . . I actually got bumper-to-bumper trying to make them run off the road. My car is higher so my lights were actually in the window. They were looking up and down because they took their masks off. . . . I could see the passenger's gold teeth, and I knew who it was at the time. They slowed down, and I passed them. I got a good look at their face, and I got off the exit to come back home. I got behind them and was able to get close and turn on my bright lights. I could see that they had removed their masks. . . . The passenger was ducking up and down. He turned around and was looking up and down. His eyes were in my lights, and I could

5

see his gold teeth, and I saw his face. I recognized his face. It was Robert Turner. Jackson testified that he had known appellant for ten years and that they were cousins through their fathers. Jackson identified appellant in the courtroom and testified with absolute certainty that appellant was the passenger in the vehicle.

The State proffered the dispatch log for the second time after the testimony of these witnesses, and counsel for appellant reiterated his earlier objection. The circuit court overruled the objection, finding that "the prejudicial nature [no longer] stands." Counsel again objected on the basis of prejudice. The court, again overruling the objection, found that the log "is no longer prejudicial because worse facts have come in."

Appellant argues on appeal that the circuit court abused its discretion by allowing the dispatch call log into evidence because it identified him by name with no basis for reliability, thus prejudicing the jury against him. He further argues that the prejudice was not harmless because his defense was that of "mistaken identity." We disagree with both arguments.

We find no abuse of discretion in the circuit court's decision that the probative value of the dispatch log substantially outweighed the danger of unfair prejudice. The log, albeit prejudicial on its own, corroborated the victims' testimony that appellant was involved in the robbery and burglary. Moreover, the identification of appellant by name in the 911 calls undermines his theory of mistaken identity. The State was entitled to prove its case as conclusively as it could, and the fact that the evidence may have been cumulative to other evidence at trial does not demonstrate an abuse of discretion by the trial court in light of other purposes for the evidence.

Affirmed.

HARRISON and WOOD, JJ., agree.

*Shaun Hair*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rachel H. Kemp*, Ass't Att'y Gen., and *Lindsay Bridges*, Law Student Admitted to Practice Pursuant to Rule XV of the Rules Governing Admission to the Bar of the Supreme Court under the supervision of *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.