

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–16–820

| | |
|---|---|
| | Opinion Delivered: November 1, 2017 |
| LORENZO HARRISON<br>APPELLANT | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT<br>[NO. 62CR-09-294] |
| V. | |
| | HONORABLE RICHARD L. PROCTOR, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Lorenzo Harrison appeals after he was convicted by a St. Francis County jury of murder in the first degree and possession of a firearm by certain persons. He was sentenced to serve 300 months' imprisonment for murder in the first degree and 60 months' imprisonment for possession of a firearm by certain person, both to be served concurrently. On appeal, appellant contends that (1) the trial court's denial of his motion to sever resulted in prejudicial error; (2) the trial court erred in denying his motions for directed verdict as to the offense of murder in the first degree; and (3) the trial court erred in refusing to submit his proffered jury instruction on the "choice of evils" defense. We affirm.

On July 4, 2009, appellant shot the victim, Joe Evans (Joe), during a "block party" in Hughes, Arkansas. Appellant was later arrested and charged with murder in the first degree, a Class Y felony, under Arkansas Code Annotated section 5-10-102 (Repl. 2013), and with possession of firearm by certain persons, a Class D felony, under Arkansas Code

Annotated section 5-73-103. A jury trial was held on August 5–8, 2015, and the following facts were introduced at trial.

There was testimony that on the day of the incident, the victim, Joe Evans; his brother, Roosevelt Evans (Roosevelt); and his cousin, Tavarious Speed (Speed) were all together and planning to attend the block party. The three men went to a nearby liquor store; Joe and Roosevelt went inside the store, but Speed stayed outside. Vanessa Harrison (Vanessa), appellant's wife, was also in the liquor store with other women. While Roosevelt and Joe were inside, Joe got into a heated verbal argument with Vanessa. Roosevelt testified that as Vanessa and the other women were leaving the store, Vanessa said she was going to call her husband, appellant, to get him to do something to Joe.

Shortly thereafter, Roosevelt and Joe left the liquor store and were joined by Speed. As the three men were walking around a corner en route to the block party, appellant pulled up and got out of his car with a gun. Roosevelt and Speed each testified that appellant pointed and fired the gun at Joe and that Joe ran away. Speed testified that he was then hit in the head by someone with a gun and was "knocked out." Roosevelt testified that after Joe ran away, appellant pursued him and continued to shoot at him. Roosevelt followed and remained within twenty feet of the pursuit. At some point, appellant caught up with Joe. According to Roosevelt, at that point, Joe was facing appellant with his hands up begging for him to not shoot, but appellant shot him. Appellant left, and Roosevelt ran to his brother's aid, picked him up, and carried him to a nearby car to take him to a hospital. An ambulance was called, and at some point between Hughes and West Memphis, the car was met by an ambulance. Joe was transferred to the ambulance and transported to a hospital

in Memphis, Tennessee.  However, Joe died as a result of his injuries en route to the hospital.  Dr. Frank Peretti testified that Joe had been shot twice, the fatal shot having been in the abdomen.

After the State rested its case, appellant moved for a directed verdict on the charge of murder in the first degree.  Appellant specifically argued that the State failed to prove that he had purposely caused the death of the victim and that Roosevelt's testimony was inconsistent.  The trial court denied the motion.

There were two other eyewitnesses to the incident who testified for the State.  Tamara Robinson (Robinson) and Roslyn Rucker (Rucker) testified that they were in a car approaching the block party when they saw appellant cross the street in front of them and walk toward Joe with a gun pointed at him.  They testified that Joe backed away from the situation with his hands up in the air.  Rucker further testified that she saw Joe mouth the words "put the gun down.  Don't shoot me."  Seconds later, appellant fired his gun toward Joe.  Robinson and Rucker testified that they saw Joe turn and run and that appellant chased him.  Robinson and Rucker lost sight of appellant and Joe.  After they drove around the block, Robinson and Rucker saw Roosevelt carrying Joe to a nearby car.

There were two other witnesses to the incident who testified for appellant.  Vanessa, appellant's wife, and her sister, Felicia McDonald (Felicia), testified to a different version of events.  Vanessa and Felicia testified that they were in the liquor store with Joe and Speed.  Vanessa testified that she did not see Roosevelt in the store.  Vanessa and Felicia testified that Joe confronted Vanessa and threw ice at her while they were in the store.  After they left and walked around the block, they ran back into Joe and Speed.  At that point, Joe

threw some type of a firework at Vanessa. The women testified that Joe and Speed knocked Vanessa to the ground and punched her repeatedly. Vanessa testified that she was hit in the side, back, and face. Vanessa further testified that appellant arrived during the attack, screamed at the men to get off of her, fired a warning shot, hit Speed in the back of the head with the pistol, and began tussling with Joe. Vanessa testified that while the men were fighting, Felicia grabbed her and that they left the scene. Felicia testified somewhat differently in that she said she never saw appellant and that she simply grabbed Vanessa and took her home as soon as she could get Vanessa away from Joe and Speed. Felicia additionally stated that she called the police to report the incident.

Lieutenant Tommy Watlington responded to Felicia's call and took Vanessa's statement. Lieutenant Watlington testified that he did not see any physical signs that Vanessa had been involved in a fight and confirmed that he did not call for any medical assistance.

After the appellant rested, he renewed his motion for a directed verdict, and the trial court denied his motion.

The State then called Chief Deputy Gene Wingo as a rebuttal witness. Chief Deputy Wingo testified that he went to appellant's home to interview him the day after the incident. Vanessa had told him that she did not know the location of her husband. However, after searching the home with permission, appellant was located in the attic.

At the conclusion of the State's rebuttal evidence, appellant did not renew his motion for a directed verdict. The jury found him guilty of both charges. Appellant waived jury sentencing and, in agreement with the State, accepted an aggregate term of twenty-five years' imprisonment. This appeal followed.

## I. *Sufficiency of the Evidence*

Although appellant does not address the denial of his motion for directed verdict until his second point on appeal, we must address such a challenge first for purposes of double jeopardy. *See Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510. Appellant does not contest the sufficiency of the evidence to support his conviction for possession of a firearm by certain persons; rather, he argues that the evidence was insufficient to support his conviction for murder in the first degree. Appellant more specifically argues that the evidence was insufficient to prove that he purposely caused the death of victim. The State responds that appellant's challenge is not preserved for review on appeal, and we agree.

Arkansas Rule of Criminal Procedure 33.1 (2016) requires that an appellant move for a directed verdict at the close of the State's evidence and again at the close of all the evidence, and that the failure to do so waives a challenge to the sufficiency of the evidence on appeal. *See Dickey v. State*, 2016 Ark. 66, 483 S.W.3d 287; *Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005). In *Dickey*, our supreme court specifically held that the failure to renew a motion for directed verdict after the close of the State's rebuttal testimony waived the issue of sufficiency of the evidence. *Id.* Our supreme court further explained that a renewal is more than a matter of mere form; it goes to the substance of the evidence arrayed against the criminal defendant. *Id.* Here, although the appellant initially made his motion for a directed verdict, he failed to renew his motion after the close of the State's rebuttal testimony. Thus, appellant failed to preserve his challenge to the sufficiency of the evidence for appellate review.

II.  *Motion to Sever*

Appellant filed a pretrial motion to sever his count for murder in the first degree from his count for possession of a firearm by certain persons.  In his motion, he argued that the charges against him were not "part of a single scheme or plan" as required under Arkansas Rule of Criminal Procedure 22.2(a).  After a hearing, in which appellant additionally argued that he would be prejudiced because the jury would be presented with evidence that he had a prior criminal conviction, the trial court denied the motion.  Appellant argues on appeal that this was error.

A defendant has a right to a severance when two or more offenses have been joined solely on the ground that they are of the same or similar character.  *Watkins v. State*, 2009 Ark. App. 124, 302 S.W.3d 635.  Otherwise, granting or refusing a severance is within the discretion of the trial court, and the decision by the trial court will not be disturbed absent an abuse of discretion.  *Id.*  A severance motion may be denied if the two offenses were part of a single scheme or plan or if both offenses require the same evidence.  *Id.*

The issue of whether a possession-of-a-firearm-by-certain-persons charge should be severed from a murder charge is well settled.  In *Ferrell v. State*, 305 Ark. 511, 810 S.W.2d 29 (1991), our supreme court explained that while possession of a firearm is a common element with murder perpetrated by means of a firearm, the introduction of a conviction of a prior felony as required for a possession-of-a-firearm-by-certain-persons charge has nothing to do with the elements of proof required for murder in the first degree.  Moreover, the presentation of a prior conviction to the jury runs the risk of prejudicing the trial of the joined offense to some degree.  *Id.*  Therefore, because the two offenses were not part of a

SLIP OPINION

single scheme or plan nor did they require the same evidence, the trial court erred in refusing to sever the two charges.

In addition to error, however, appellant must show some form of prejudice before we can disturb the ruling of the trial court. *Watkins*, *supra*. Our supreme court has declined to conclude that the joinder of a possession-of-a-firearm-by-certain-persons charge along with another felony charge constitutes prejudice by that fact alone in all instances. *Sutton v. State*, 311 Ark. 435, 844 S.W.2d 350 (1993). Instead, such cases are to be examined individually to determine if the presumption of prejudice has been overcome and whether the trial court abused its discretion. *Watkins*, *supra*. Our supreme court has previously held that the error was not prejudicial with the existence of one or more overriding factors, including (1) the overwhelming evidence of guilt; (2) cross-examination of the defendant on the prior conviction; and (3) a limiting instruction to the jury. *Sutton*, *supra*.

Here, two of the overriding factors were present. Unlike in *Sutton*, where the evidence of guilt was characterized as "weak," there was direct evidence of appellant's guilt of murder in the first degree. Roslyn Rucker, Tamara Robinson, Tavarious Speed, and Roosevelt Evans testified to having observed appellant shoot directly at the victim. Rucker, Robinson, and Roosevelt testified that they saw appellant chase the victim. Additionally, Roosevelt testified that he saw appellant shoot and kill the victim. Therefore, there was overwhelming evidence of guilt. *See Ferrell*, *supra* (holding that the testimony of three eyewitnesses constituted overwhelming evidence); *Watkins*, *supra* (holding that direct evidence of guilt in the form of testimony in addition to circumstantial forensic evidence was sufficient). Also, another *Sutton* factor was present. The trial court specifically

instructed the jury that it "should not take the proof that the defendant has a felony conviction as proof of his guilt of murder." Therefore, we hold that the error by the trial court was not prejudicial to appellant under the circumstances of this case and affirm the trial court's ruling.

After the trial court had denied appellant's motion to sever the counts, the State introduced into evidence a certified copy of a statement executed by appellant in the prior offense pleading guilty to robbery and theft by receiving. Appellant renewed his objection and moved for a mistrial. However, appellant's motion was denied. On appeal, appellant states as subheading b under this point on appeal that "[t]he trial court erred by denying the Appellant's motion for mistrial after the prosecution introduced in front of the jury a certified copy of a police statement of the Appellant pleading guilty to prior offense." Although he outlines that the trial court denied his motion for mistrial, appellant fails to provide any argument, citation to any authority, or prayer for relief. We do not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Armstrong v. State*, 366 Ark. 105, 233 S.W.3d 627 (2006); *Watson v. State*, 2015 Ark. App. 721, 478 S.W.3d 286. Thus, we affirm on this point on appeal.

### III. *"Choice of Evils" Jury Instruction*

Appellant finally argues that the trial court erred in failing to give his proffered AMI Crim. 2d 702 "choice of evils" jury instruction. This defense is set forth in Arkansas Code Annotated section 5-2-604(a)(1), which provides that an offense is justifiable when the "conduct is necessary as an emergency measure to avoid an imminent public or private injury" and "[a]ccording to ordinary standards of reasonableness, the desirability and urgency

of avoiding the imminent public or private injury outweigh the injury sought to be prevented by the law proscribing the conduct." Appellant argues that he was entitled to the instruction as a defense to the possession-of-a-firearm-by-certain-persons charge because he received an alarming phone call from his wife that she was being verbally assaulted and needed to possess a firearm to "rescue her from . . . a perilous situation."

We review a trial court's decision to give or reject a jury instruction under an abuse-of-discretion standard. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008). A defendant is entitled to a jury instruction when it is a correct statement of law and there is some basis in the evidence to support giving the instruction. *Prodell v. State*, 102 Ark. App. 360, 285 S.W.3d 673 (2008). When the defendant has offered sufficient evidence to raise a question of fact concerning a defense, the instructions must fully and fairly declare the law applicable to that defense; however, there is no error in refusing to give a jury instruction where there is no basis in the evidence to support the giving of the instruction. *Id.* On appeal, our role is not to weigh the evidence to determine if the justification instruction should have been given, but rather we limit our consideration to whether there is any evidence tending to support the existence of a defense. *Id.* To preserve for appeal an objection to an instruction, the appellant must proffer the proposed instruction to the trial court, include it in the record on appeal, and abstract it to enable the appellate court to consider it. *Sipe v. State*, 2012 Ark. App. 261, 404 S.W.3d 164. Furthermore, it is up to the movant to obtain a ruling in order to preserve an issue for appeal. *Hamm v. State*, 301 Ark. 154, 782 S.W.2d 577 (1990).

Here, appellant failed to obtain a ruling from the trial court. When jury instructions were discussed, appellant requested AMI Crim. 2d 702, among other instructions. The trial

court stated that it was setting aside instruction 702 to turn its attention to AMI Crim. 2d 704. However, the trial court never revisited the instruction, nor did appellant request a ruling. Appellant even acknowledged that the trial court failed to reject the instruction when he proffered the instruction after the jury had already found him guilty and had been dismissed but before the record had been closed. Because appellant failed to obtain a ruling, he failed to preserve this issue on appeal for our review. *See Hamm*, *supra*. Thus, we affirm appellant's convictions.

Affirmed.

GRUBER, C.J., and MURPHY, J., agree.

*Alvin Simes*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.