DAVID M. GLOVER, Judge
On May 14, 2016, while driving his vehicle Sergio Garza hit a motorcycle. Joe Payte, the driver of the motorcycle, suffered serious injuries,[1] and the passenger, Charlene Payte, Joe's wife, died as a result of the injuries she sustained in the accident. Garza was convicted by a Montgomery County jury of the offenses of leaving the scene of an accident involving death or personal injury, battery in the first degree, and negligent homicide. He was sentenced to six years in prison for leaving the scene of an accident, and twenty years each for the battery-in-the-first-degree and negligent-homicide convictions, with the sentences ordered to be served consecutively. On appeal, Garza argues the circuit court erred in denying his motions for directed verdict. We affirm.
At trial, David Godsey testified that on the night of the accident, he saw the body of Charlene Payte lying partially in the road on the edge of Highway 182. He stopped to investigate and found Charlene Payte facedown and unresponsive; he called 911, but she passed away before she could receive medical assistance. Godsey heard Joe Payte yelling; he found Joe lying in the ditch severely injured. While Godsey did not see the accident, Joe told him he and Charlene had been hit.
According to paramedic Michael Williams, Joe suffered life-threatening injuries in the accident and was in an excruciating amount of pain. Williams administered IV fluids to keep Joe's blood pressure elevated, and Williams testified Joe would not have lived much longer if he had not received emergency medical care.
Arkansas State Trooper Ryne Shelton investigated the accident and concluded the Paytes were rear-ended by Garza. He explained Garza left over 170 feet of skid marks, indicating he was traveling at a somewhat high rate of speed; the motorcycle was in the westbound lane in the middle of a turn when it was hit, which is the lane for oncoming traffic; and Garza's vehicle *406 hit the motorcycle from behind with such force the motorcycle's taillight was impaled in the grill of Garza's vehicle and Garza's airbags were deployed. Trooper Shelton testified a Montgomery County deputy sheriff located Garza and returned him to the scene in handcuffs; Garza had a strong odor of intoxicants on his breath, which led Trooper Shelton to believe alcohol might be involved. He explained that the accident occurred at 7:32 p.m., and while Garza consented to have his blood drawn for testing, anytime a nurse would come near him with a needle, he would begin yelling, and the nurse felt it was unsafe to attempt to draw blood. Trooper Shelton offered Garza a urine test at 12:05 a.m., and a urine sample was taken thirty minutes later-five hours after the accident. Trooper Shelton testified he administered field-sobriety tests of horizontal-gaze nystagmus, walk and turn, and one-leg stand to Garza prior to Garza's urine test. He said Garza had distinct sustained nystagmus at maximum deviation in both eyes, as well as onset of nystagmus prior to forty-five degrees, which indicated impairment; Garza lost his balance during the instruction stage of the walk-and-turn test, used his arms for balance, stepped off the line, had improper turning, and stopped while walking, which were all clues of impairment; and he provided multiple clues during the one-leg-stand test, such as putting his foot down, using his arms for balance, and swaying while he balanced. Trooper Shelton reached the conclusion Garza was impaired as a result of his performances on these field-sobriety tests.
A forensic toxicologist from the state crime lab testified Garza's urine tested positive for amphetamines, although she could not determine the amount of amphetamines in his urine and did not know if Garza had enough amphetamines to be intoxicated. A second toxicologist from the state crime lab testified she conducted a test on Garza's urine and found .072 percent alcohol at the time of the test, which translated to .055 percent in Garza's blood at that time; she also found methamphetamine and amphetamines in Garza's urine, but she did not conduct quantitative testing of the amounts.
Chad Davis, a deputy at the Montgomery County Sheriff's Department, testified he was assigned the task of locating Garza; after receiving a tip, he found Garza at his sister's residence about a quarter of a mile from the accident. Garza's sister said he had just arrived, which was about forty-five minutes to an hour after the wreck. Davis found Garza sitting on the couch in his sister's house; when Garza attempted to stand, he fell back onto the couch and required assistance to stand up. Davis stated he had to hold Garza up to walk him out the door, and he arrested Garza for leaving the scene of an accident. Davis returned Garza to the scene of the accident and transferred him to Trooper Shelton's custody. It was Davis's opinion that Garza was intoxicated at that time.
Neal Thomas, a criminal investigator with the Arkansas State Police, assisted in the crash investigation. It was Thomas's opinion the motorcycle was impacted by a vehicle from the rear. Thomas testified that according to his training, the average dissipation rate of alcohol in the human body is about .015 percent an hour.
The State rested after Thomas's testimony. Garza moved for directed verdicts on all three counts. Garza's counsel argued there was no evidence Garza knew there was a person visible to him after the accident; therefore, he could not be guilty of leaving the scene of the accident; as to first-degree battery, he argued there was no evidence of Garza's intent to injure anyone; and as to negligent homicide, he *407 argued there was no evidence Garza was negligent. Those motions were denied.
Beau Graves testified for the defense. He stated he lived in the area where the wreck occurred, he saw a car being driven down the road, quickly and then he heard the "boom" of the wreck. Graves said the driver then pulled into his driveway, parked by the edge of the woods, and a person he identified as Garza got out of the car and got into another car with another person. Graves said he did not know if Garza was intoxicated, and when he asked Garza what he hit, Garza said he did not know-maybe a cow, a dog, or a motorcycle.
Garza testified in his own defense. He stated that, on the day of the accident, he had some whiskey to drink "pretty much" right before the accident, got into his car to drive to his sister's house, and the accident happened. Although Garza denied using methamphetamine on the day of the accident, he admitted he had used the drug the day before. However, he denied that he had been under the influence of either methamphetamine or alcohol the day of the wreck.
Garza explained that as he was driving to his sister's house, a motorcycle was in front of him in the same lane, and when he began to pass the motorcycle, it "pretty much" came into the lane in front of him, and he slammed on his brakes and closed his eyes. He said after the impact, he thought the accident "wasn't real"; he looked around and did not see anyone; he did not see the motorcycle; and he was unaware there was anyone injured. Garza then drove to his sister's house, which was where the officer found him and took him back to the accident site. Garza admitted it was difficult to take a blood sample from him because he has a needle phobia, but he agreed to provide a urine sample.
On cross-examination, Garza testified he knew the motorcycle was in front of him because it turned right in front of him. He claimed he did not intend to hit the motorcycle; when he looked up he did not see any people or the motorcycle; he did not see anyone to give aid to or to provide his name or insurance information to; and if he hit the motorcycle it was an accident. He denied he told Dr. Paul DeYoub he had drunk a half pint of whiskey and had used methamphetamine five hours prior to the accident.
The defense rested after Garza's testimony. Counsel renewed Garza's directed-verdict motions, which the circuit court again denied.
The State recalled Neal Thomas to the stand to explain why he disagreed with Garza's version of events. After Thomas's rebuttal testimony, the jury found Garza guilty of all three offenses.
We are unable to reach the merits of Garza's arguments because they are not preserved for appeal. Although Garza made directed-verdict motions at the close of the State's evidence and at the close of his case, he failed to renew his directed-verdict motions after the State recalled Neal Thomas as a rebuttal witness. Rule 33.1(a) of the Arkansas Rules of Criminal Procedure provides that in a jury trial, a motion for directed verdict shall be made at the close of the State's evidence and at the close of all the evidence. The failure to challenge the sufficiency of the evidence at the times and in the manner required constitutes a waiver of a sufficiency-of-the-evidence argument on appeal. Ark. R. Crim. P. 33.1(c) (2017). Failure to renew a motion for directed verdict after the close of the State's rebuttal testimony waives the issue of sufficiency of the evidence on appeal. Harrison v. State , 2017 Ark. App. 580, 533 S.W.3d 146. A renewal is more than a matter of mere form; it goes to the *408 substance of the evidence against a criminal defendant. Id. Although Garza initially made his directed-verdict motions at the close of the State's case and renewed those motions at the close of the presentation of his evidence, he failed to renew his motions after the close of the State's rebuttal testimony and thus waived any challenge to the sufficiency of the evidence on appellate review.
Affirmed.
Vaught and Hixson, JJ., agree.

Joe Payte died several weeks later, on June 21, 2016, as a result of the injuries he sustained in the accident.