Dewayne Dee DILLARD *v.* STATE of Arkansas

CR 97-1298                                    971 S.W.2d 764

Supreme Court of Arkansas
Opinion delivered June 4, 1998
[Petition for rehearing denied July 9, 1998.]

*John W. Settle*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Dewayne Dee Dillard appeals the judgment of the Sebastian County Circuit Court convicting him of two counts of sexual abuse in the first degree of two minor girls and sentencing him to eight years' imprisonment and a $10,000 fine for each count. The Arkansas Court of Appeals certified this appeal to us; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5). Appellant raises one point on appeal concerning the trial court's denial of his motion to sever the two charges. We affirm.

On October 11, 1996, Appellant, age thirty-five, was arrested and subsequently charged with two counts of first-degree sexual abuse of two girls, S.S., who was then thirteen years old, and T.L., who was then fifteen years old. The alleged acts of sexual abuse occurred at least four times between June 19, 1996, through August 2, 1996. An amended information charged Appellant with rape, as to S.S., by engaging in sexual intercourse with a person less than fourteen years old pursuant to Ark. Code Ann. § 5-14-103 (Repl. 1993), and the first-degree sexual abuse

of T.L., by engaging in sexual contact with another person by forcible compulsion under Ark. Code Ann. § 5-14-108 (Repl. 1993).

During the trial below, S.S. testified that Appellant was her mother's boyfriend, and that he had asked S.S. to have sexual intercourse with him well over five times prior to June 19, 1996. She stated that on each occasion, Appellant told her that it would only take three minutes and that it would not hurt. S.S. further testified that Appellant had offered her $40.00 on every occasion, if she would let him "st[i]ck it in." S.S. testified that because her mother did not believe her allegations about Appellant, she had planned to run away from home by stealing a truck. S.S. testified that on June 19, 1996, Appellant came over to her family's apartment at about 12:30 p.m. S.S. explained that she had called Appellant to drive her and her friend, N.S., to the location of her grandmother's boyfriend's truck. S.S. stated that when Appellant arrived, she and N.S. were at the apartment, and that while N.S. was downstairs, Appellant pulled S.S. into an upstairs bathroom, threw her onto the counter, pulled off her panties, and grabbed her breasts. S.S. stated that Appellant put his hand on her mouth while he "stuck his penis in [her] private." N.S. testified that S.S. was upset when she came back downstairs and that S.S told her that Appellant had tried to touch her. N.S. stated that S.S. did not tell her that Appellant had raped her until a later date.

T.L. testified that Appellant was a friend of her parents and had visited their home about two times per week during the summer of 1996 from around July 4 through the first week of August. T.L. further testified that Appellant talked "perverted" to her "a lot" when he visited her home and asked her to have sex with him. T.L. also testified that each time Appellant asked her to have sex with him, he told her that it would only take three minutes, and that it would not hurt. T.L. further testified that Appellant made lewd remarks, admiring her breasts and buttocks, and also grabbed her breasts at least three times, using "his whole hand on [her] breast[.]" The abuse happened once in Appellant's car, once at the laundromat, and once inside T.L.'s family's apartment as she exited the balcony. T.L. further testified she had informed her parents about the incidents, and that they later confronted

Appellant. T.L. also testified that Appellant had threatened to rape her if she would not have consensual sex with him. T.L. stated that, contrary to Appellant's testimony, she did not have a vendetta against Appellant.

Appellant denied committing any of the alleged acts, and further stated that S.S. made up the allegations because she hated him. He claimed that S.S. had frequently called the police about him and had once attempted to smash his head with a boulder when he was asleep. When asked why he responded to S.S.'s call to help her get the truck, despite her animosity towards him, Appellant replied that he just wanted to get S.S. out of the house. When asked why he believed T.L. would lie about him, Appellant replied that T.L. was angry about him shooting fireworks with her boyfriend without inviting her.

Sergeant Bill Holohan, of the Fort Smith Police Department, testified that he investigated the allegations and interviewed Appellant and the victims after the Department of Human Services (DHS), Children and Family Services brought the case to his attention. Mary Pat Parnell, the DHS case manager, was present when Holohan interviewed Appellant. Both Holohan and Parnell testified that in the interview, Dillard denied touching S.S., called her gross, and said that he would not "bother himself with her." Both Holohan and Parnell testified that when Appellant was asked about T.L., he responded that he hardly ever saw her. Parnell testified that Appellant tried to change the subject when he was asked about T.L., and also stated that T.L. had a boyfriend.

For his sole argument on appeal, Appellant argues that the trial court erred when it denied his motion to sever the two offenses. Prior to trial and before the close of the evidence, Appellant moved to sever the two charges and for a mistrial, arguing that the trial court had erroneously joined the two charges on the sole basis that they were the same crime or of a similar nature. He contends they were not part of a similar plan or scheme. Appellant argued that the two offenses should have been severed under *Clay v. State*, 318 Ark. 550, 886 S.W.2d 608 (1994), in which the appellant successfully argued that the trial court abused

its discretion in refusing to sever five unrelated offenses against five individual female victims in different locations.

The trial court ultimately denied Appellant's motion, relying on *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954), in which this court held that where the charge involves "unnatural sexual acts," proof of prior similar acts is admissible to prove the defendant's "depraved sexual instinct." *Id.* at 335, 266 S.W.2d at 807.

Arkansas Rule of Criminal Procedure 22.2 provides in relevant part:

> (a) Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant *shall* have a right to a severance of the offenses. [Emphasis added.]

The decision of whether to grant a defendant's motion for severance of two or more offenses lies within the trial court's discretion, and this court will not reverse absent an abuse of discretion. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). Where, however, the offenses are joined solely on the basis that they are of the same or similar character, a defendant has an absolute right to their severance. *Id.* Rule 22.2 provides further that the trial court should grant a motion for severance if necessary for a fair trial of each offense. We consider evidence of proximity in time and space in our determination of whether a single scheme or plan existed to preclude severance of the separate charges. *Passley*, 323 Ark. 301, 915 S.W.2d 248. *See also Gillie v. State*, 305 Ark. 296, 305, 808 S.W.2d 320, 324 (1991) (affirming the trial court's decision not to sever offenses based "on a series of acts connected together . . . 'when the offenses occurred close together in time and place.'" (citing *Brown v. State*, 304 Ark. 98, 800 S.W.2d 424 (1990))).

This court has consistently allowed an exception to Rule 22.2 whenever the facts needed to prove the separate offenses are necessary for each trial, and the evidence is admissible to prove a plan, scheme, motive, or state of mind under A.R.E. Rule 404(b). *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993); *Simpson v. State*, 310 Ark. 493, 837 S.W.2d 475 (1992);

*Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992). No abuse of discretion lies when the trial court denies severance of multiple charges under those circumstances. *Richardson*, 314 Ark. 512, 863 S.W.2d 572. Rule 404(b) bars admission of prior offenses "to prove the character of a person in order to show that he acted in conformity therewith," but allows admission of such offenses to prove other purposes, including, but not limited to, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *Richardson*, 314 Ark. 512, 863 S.W.2d 572, this court recognized that evidence of prior sexual abuse of children is admissible under Rule 404(b). In *Lukach*, 310 Ark. 119, 835 S.W.2d 852, this court held that the trial court did not abuse its discretion in refusing the appellant's motion to sever separate charges of rape committed against the appellant's two nieces, ages seven and nine, where the offenses occurred within a month of each other and were committed in a similar manner. The *Lukach* court explained further that where the facts necessary to prove each offense would be necessary in each trial to prove a plan, scheme, motive, or state of mind, there is no abuse of discretion in refusing to sever the trials.

This court has distinguished between Rule 404(b) and Rule 22.2, explaining that:

> [T]he Rule 404(b) exceptions go beyond a plan or scheme and include *any independently relevant proof* such as motive, opportunity, intent, absence of mistake, and other categories. . . . The *focal point* of a Rule 404(b) analysis is whether the proof of the other crime, wrong, or act is *relevant*, not whether it was part of a single plan or scheme.

*Lindsey v. State*, 319 Ark. 132, 140, 890 S.W.2d 584, 589 (1994) (emphasis added). *See also Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998). We conclude that such evidence would be independently admissible under Rule 404(b).

In *Free v. State*, 293 Ark. 65, 71, 732 S.W.2d 452, 455 (1987), this court affirmed the admission of evidence of similar conduct with the same child or other children in the home "when it is helpful in showing 'a proclivity toward a specific act with a

person or class of persons *with whom the accused has an intimate rela-tionship.*'" (Emphasis added.) We recently explored the meaning of "intimate relationship" in *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998), where we observed that the victims do not have to live in the same home with the accused to have an inti-mate relationship. In *Hernandez*, the State's witness testified that her family allowed her to spend the night at the accused's home; thus, we held that there was an intimate relationship between the witness and the accused. We explained that A.R.E. Rule 403 requires that the relevance of the evidence is measured against the risk of unfair prejudice. *Id.* Likewise, baby sitters and others entrusted with the care of young children may form an intimate relationship with children. *See, e.g., Morgan v. State*, 308 Ark. 627, 826 S.W.2d 271 (1992); *George v. State*, 306 Ark. 360, 813 S.W.2d 792 (1991).

In *Morgan*, the sixty-three-year-old appellant denied that he had raped the two victims, ages twelve and seven. This court upheld the admission of four other girls' testimony about the appellant's prior sexual conduct toward them, which the appellant had also denied. The appellant testified that he considered the four girls as granddaughters and gave them money to buy things, and that the girls made up the sexual allegations because he had ceased giving them money. The four girls, however, testified that the appellant gave them money after their sexual encounters with him. This court again recognized that such evidence is admissible under Rule 404(b), if it is independently relevant to demonstrate motive, intent, or plan, as well as a "depraved sexual instinct" set out in *Alford*, 223 Ark. 330, 266 S.W.2d 804. This court further explained that the girls' testimony was particularly relevant, because the accused had expressly denied having any sexual con-tact with the girls.

Appellant relies on his broad interpretation of *Clay*, 318 Ark. 550, 886 S.W.2d 608, to support his argument that the trial court erred in denying his motion to sever. The facts of the *Clay* case are distinguishable from those here. Clay was charged at age eighteen and subsequently convicted of five unrelated sexual assaults against five individual females, who ranged from three to five years younger than the accused. In reversing the trial court's

denial of severance, this court adhered to Rule 404(b), which generally bars admission of prior offenses to prove that the defendant acted in conformity therewith. This court reasoned that prejudice almost inevitably results when a defendant is forced to testify about one crime while on trial for another offense, but also distinguished Clay's case from situations involving the "depraved sexual instinct" exception under *Alford*, 223 Ark. 330, 266 S.W.2d 804. This court reasoned that Clay's acts did not show that the accused had a depraved sexual tendency toward a particular act with a person or class of persons and concluded that because the alleged offenses had occurred over a one-year period in various locations, involved different crimes with different culpable mental states, and were committed in dissimilar manners, there was no overall proof of intent, plan, or lack of mistake.

■ Here, the evidence supports the trial court's denial of severance. The thirty-five-year-old Appellant obtained access to both young female victims through his relationships with their respective parents; he stayed with S.S.'s mother off and on, and visited T.L.'s home frequently during the time frame at issue. Additionally, T.L. had lived with S.S.'s mother and Appellant for a brief period after T.L.'s house had burned. As such, we conclude that Appellant formed intimate relationships with both victims. The similarity of the manner in which Appellant committed the acts is remarkable. Both victims testified that Appellant made sexual advances toward them and grabbed their breasts on numerous occasions. S.S. testified that Appellant raped her after she had refused his ongoing demands for sexual intercourse. T.L. testified that Appellant threatened to rape her if she would not consent to sex. Both victims testified that he told them that sex would not hurt and would only take about three minutes. Moreover, the overlapping time frame of June 19, 1996, through August 2, 1996, also weighs in favor of proving Appellant's intent, scheme, or plan.

■ Because Appellant's conduct was remarkably similar toward both victims with whom he enjoyed an intimate relationship, we conclude that the evidence from each victim would be relevant and admissible in separate trials. Thus, we hold that the trial court did not abuse its discretion in denying the motion to sever the offenses.

Affirmed.

BROWN, J., concurs.

NEWBERN and IMBER, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. The majority opinion states that the severance of criminal offenses for trial is a matter within the discretion of the trial court but then correctly recites Ark. R. Crim. P. 22.2 and states that "when. . .the offenses are joined solely on the basis that they are of the same or similar character, a defendant has an absolute right to their severance," citing *Passley v. State,* 323 Ark. 301, 915 S.W.2d 248 (1996). The opinion then proceeds to point out how "remarkably similar" the offenses in question appear to have been, and that discussion is presumably in support of the trial court's *refusal* to sever the offenses.

One pillar of the majority opinion is, I take it, that there is an exception to Rule 22.2 when the evidence to be used by the State to prove one of the offenses is the same as that to prove the one from which it is sought to be severed, "and the evidence is admissible to prove a plan, scheme, motive, or state of mind under A.R.E. 404(b)." And yet these offenses occurred with different alleged victims, at different times, and at different places. There is no evidence whatever that each alleged offense involved a plan, scheme, motive, or state of mind relevant to the other.

Another pillar is the "intimate relationship in the home" recitation. That one simply will not hold. While evidence of alleged previous sexual events between Mr. Dillard and either of the alleged victims might be admissible pursuant to that exception to Rule 404(b), it furnishes no basis whatever for refusal to sever the alleged offenses. The same is true of the "depraved sexual instinct" or "pedophile" exception to Rule 404(b).

If our case law and Rule 22.2 are interpreted as the majority suggests, there is a direct conflict between the absolute right to severance when the basis for joinder is the "same or similar character" of the offenses charged and the "exceptions" allowing evidence of similar offenses absent a showing of a "single scheme or plan."

We attempted to sort all of this out in *Clay v. State,* 318 Ark. 550, 886 S.W.2d 608 (1994). We went to great lengths to discuss

and describe the meaning of the words, "single scheme or plan," and we concluded that the five separate sexual incidents allegedly committed by Mr. Clay with five girls, all of whom were 14 or younger, did not qualify as a "single scheme or plan." We distinguished *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954), and the "depraved sexual instinct" cases. We summarized the result as follows:

> In summary, the alleged offenses occurred over a twelve-month period, involve different charges, and were committed in different manners, against different victims, at different locations. They did not involve "similar acts with the same child or other children in the same household . . . showing 'a proclivity toward a specific act with a person or class of persons.'" Free, 293 Ark. at 71, 732 S.W.2d at 455. There was no allegation or proof that the five offenses were planned in advance as part of a single scheme. There was no allegation or proof these crimes were part of one criminal episode. Since these five crimes were of a similar character, but were not part of a single scheme or plan, the appellant had "a *right* to a severance of the offenses." A.R.Cr.P. Rule 22.2(a) (emphasis added). In addition, the culpable mental state required to be proved was different for some of the crimes. Both the severance rule and our cases mandate reversal and remand for new trials.

Even the penultimate sentence of that summary applies here, as the two charges required substantially different evidence for proof of guilt. Mr. Dillard was charged in the amended information, count one, with unlawfully and feloniously engaging in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age, Ark. Code Ann. § 5-14-108(a)(4). In count two, he was charged with unlawfully and feloniously engaging in sexual contact with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1).

The *Clay* decision, in my view, drew away much of the confusion I have observed in our previous decisions, and it properly described the limits on the "exceptions" to Rule 22.2 and Rule 404(b). With the majority opinion in this case, we are dumped back into the swamp.

I respectfully dissent.

IMBER, J., joins in this dissent.