SLIP OPINION

Cite as 2015 Ark. 340

# SUPREME COURT OF ARKANSAS

No. CR-14-818

| | | |
|---|---|---|
| JOHN CHAD GRIFFIN | APPELLANT | **Opinion Delivered** October 1, 2015 |
| V. | | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CR-13-12] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE ROBERT E. MCCALLUM, JUDGE |
| | | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On January 23, 2013, appellant, John Chad Griffin was charged by felony information with first-degree murder. On February 26, 2014, Griffin waived his right to a jury trial and pleaded guilty to first-degree murder and an enhancement for committing the murder in the presence of a child.

Griffin's conviction arises from the January 16, 2013, death of David Stewart. In 2010, Griffin moved into Melissa French's house on a permanent basis, where he rented a room from French and lived in the house with French and her minor son. French is the mother of Stewart's minor son. Stewart arrived at French's house on January 13, 2013. French testified that on January 16, 2013, after Griffin got off work, Griffin and Stewart started drinking and, at some point, Griffin and Stewart began to argue. French testified that Stewart walked up to her in the kitchen and poked her on the back and said, "Where is the F'ing liquor, . . . because things are fixing to get bad." French began checking the house for more liquor and

recalled Stewart putting his shoes on while sitting down on the couch. Upon returning to the living room, French saw Griffin point a shotgun at the back of Stewart's head and pull the trigger.

At approximately 8:43 p.m., the Arkadelphia Police Department responded to a 911 call from French reporting a shooting at her residence. Corporal Joey Burroughs of the Arkadelphia Police Department testified that, when he arrived on the scene, he noticed a young child walking from the residence. The child stated, "My daddy's been shot." Corporal Burroughs ushered the child across the street to a neighbor's house and proceeded toward French's residence. Inside the residence, officers discovered French on the living room floor attempting CPR on Stewart, who was already deceased. French told the officers that "Chad shot him" and that Griffin was in the back bedroom of the residence and was armed. The officers took Griffin into custody without incident. The officers then cleared the residence and located a shotgun and a box of shotgun shells in the bedroom later identified as Griffin's bedroom. Officer Aaron Abbott of the Arkadelphia Police Department conducted a patdown of Griffin and located two shotgun shells in the pocket of Griffin's pants.

During transport to the Clark County jail, Griffin made incriminating statements. Additionally, while at the police department, Griffin was videotaped during the booking process. During the booking video, Griffin made several incriminating statements. On January 2, 2014, Griffin filed a pretrial motion to suppress the statements he made while in police custody. On February 24, 2014, the circuit court held a pretrial hearing and ruled that Griffin's statements during transport and after the police investigators left the booking area

2

were admissible as voluntary and spontaneous statements. On February 26, 2014 and February 27, 2014, the circuit court conducted Griffin's sentencing trial. During the sentencing trial, the circuit court admitted the portion of the booking video that had been previously introduced into evidence.

On February 28, 2014, the circuit court sentenced Griffin to life imprisonment, with a concurrent ten-year enhancement for committing the murder in the presence of a child. On March 23, 2014, Griffin filed his timely notice of appeal. Because this case involves a sentence of life imprisonment, jurisdiction is properly in this court pursuant to Arkansas Supreme Court Rule 1-2(a)(2)(2014).

*Points on Appeal*

Prior to reaching Griffin's points on appeal, we note that Arkansas Rule of Appellate Procedure–Criminal 1(a) provides that there is no direct appeal from a plea of guilty, except as provided by Rule 24.3(b) of the Arkansas Rules of Criminal Procedure. However, an appeal may be taken after a guilty plea when the issue on appeal is one of evidentiary errors which arose after the plea and during the sentencing phase of the trial, regardless of whether a jury was impaneled or the trial judge sat as the trier of fact. *Johnson v. State*, 2010 Ark. 63.

Griffin presents three points on appeal, all of which involve the sentencing phase of trial: (1) the circuit court erred in admitting a portion of the booking video depicting incriminating statements made by Griffin because the statements were obtained in violation of Griffin's Fifth Amendment rights; (2) the circuit court erred in limiting Griffin to evidence related to the afternoon of January 16, 2013, and excluding evidence relating to the victim

SLIP OPINION

and Griffin's activities from January 13, 2013, to January 16, 2013; and (3) the circuit court erred in failing to consider and give weight to Griffin's intoxication as a mitigating factor during sentencing.

## I. *Booking Video*

For his first point on appeal, Griffin argues that the circuit court erred in admitting a portion of the booking video depicting incriminating statements made by Griffin. Griffin contends that his incriminating statements were obtained in violation of his Fifth Amendment rights. As noted above, Griffin filed a pretrial motion to suppress all of his statements made during the booking video. The circuit court granted Griffin's motion to suppress his statements made during the first portion of the video, which comprised approximately the first five minutes of the video, but admitted the latter five minutes of the video. In its order, the circuit court held as follows:

> The next question is whether the police officer's actions at the booking room which are reflected in the video constitute an interrogation which requires a suppression of all of Griffin's statements reflected on the video. During the first 5 minutes of the video, most of the conversations are between and among Griffin and Investigators Bethell and Dixon. My interpretation of this part of the video is that Investigators Bethell and Dixon are observing and interacting with Griffin in order to make a final decision about whether to postpone an interview of Griffin until the following day due to Griffin's intoxication. During this time, Bethell and Dixon posed some questions to Griffin. For example:
>
> GRIFFIN:    Hey man, that dude's dead?
>
> DIXON:    What dude?
>
> . . .
>
> BETHELL:    Do you want to talk to us about what happened tonight?

Cite as 2015 Ark. 340

GRIFFIN:      Yeah, I don't care.  I will just spill my guts. Yeah, just spill them out.  But I need a cigarette.

BETHELL:      Do you understand why you're under arrest?

GRIFFIN:      Yeah, I understand why I'm under arrest. Cause I loaded a shotgun and pointed it point blank at a person's head and tried to kill him.

BETHELL:      Tried to kill him?

GRIFFIN:      And they need to be dead.

Bethell and Dixon chose to postpone the formal interview with Griffin until the next day.  They clearly communicated that decision to Griffin as evidenced by the following statements:

BETHELL:      We're gonna let some of the alcohol get out of your system.

GRIFFIN:      Alright

BETHELL:      We'll come back and talk to you some more, okay.  Okay?

UNKNOWN:   We want you to be a little clearer.

GRIFFIN:      Yeah, I think it'd be better for you to talk to me right now.

BETHELL:      Well, if the courts would allow us to do that we would love to.

GRIFFIN:      Well, I think you'd be better off if you talked to me a little right now.

DIXON:        Can't do it brother.

Shortly after this exchange (approximately 5 minutes into the video), Bethell and Dixon left the booking room and never returned.  The remaining 5 minutes of the video reflects conversation between Griffin and Deputy Robbie Plyler who is not an investigating officer.  As stated earlier, Plyler's primary purpose during this time was to facilitate Griffin's booking-in process.  Plyler did not ask Griffin any questions about the shooting incident.  Instead, Plyler tried to convince Griffin to stop making statements.  For example, Plyler told Griffin:  ". . . we're not asking you what happened.  We don't want your statement right now."  After the departure of Bethell

5

and Dixon, Griffin continued to make spontaneous and unsolicited statements to Deputy Plyler and the other two deputies in the booking room about the shooting incident.

. . .

Griffin's motion to suppress his statements made after Investigators Bethell and Dixon departed the booking room is denied. Griffin's motion to suppress his statements made from the time Dixon said "What dude?" until the time Bethell and Dixon left the booking is granted.

Accordingly, the statements at issue are the statements Griffin made after Investigators Bethell and Dixon left the booking room. On appeal, Griffin asserts that these statements should have been suppressed as they were also the product of custodial interrogation. Griffin contends that the statements at issue occurred prior to any attempts to diffuse the situation by the remaining officers. Griffin further argues that his statements were obtained in violation of *Miranda v. Arizona*, 348 U.S. 436 (1966). Therefore, the circuit court should not have considered his statements during sentencing. The State responds that the circuit court correctly admitted the last five minutes of the booking video because even though Griffin made his statements while he was in custody, he did not do so in response to interrogation; rather, he spoke spontaneously.

We now turn to the relevant admitted portions of the booking video. The following colloquy is at issue:

| | |
|---|---|
| [GRIFFIN]: | Did it to save this child, save -- |
| UNKNOWN SPEAKER: | Give me your top shirt off. |
| [GRIFFIN]: | I've been there with this child and with his mother. Thank you. I've been with here -- I've been with this mother and with this child for a long time. And he is -- |

6

Cite as 2015 Ark. 340

he's never been there.  He has no reason to be there.

UNKNOWN SPEAKER:     {Inaudible.}

[GRIFFIN]:     And he's a -- he's a long-term felon.  He is a --

UNKNOWN SPEAKER:     Come, come --

[GRIFFIN]:     -- a sorry son of a bitch.

UNKNOWN SPEAKER:     -- do a memo on what you were told and what {inaudible} --

[GRIFFIN]:     And I fucking killed him.  I drank too much, and I fucking killed him.

UNKNOWN SPEAKER:     I need you to come to the --

[GRIFFIN]:     I did.  He's a sorry son of a bitch, does not deserve to live, and I fucking killed him.

UNKNOWN SPEAKER:     And -- and -- Chad.  Come up here to the fucking jail, do your memo and tell {inaudible} to get his handcuffs, please. Now, I'm frustrated.  Bye.  Listen -- okay, man, the Supreme Court won't let them interrogate you when you've been drinking.  They won't let them talk to you -- or any of the investigators.

UNKNOWN SPEAKER:     Hello?

UNKNOWN SPEAKER:     Here's the deal -

UNKNOWN SPEAKER:     Hey --

UNKNOWN SPEAKER:     Right now we don't -- we're not asking you what happened, we don't want your statement right now.

UNKNOWN SPEAKER:     {Inaudible.}

UNKNOWN SPEAKER:     The investigators, they'll take it -- they'll take it in the

7

Cite as 2015 Ark. 340

morning.  Okay.  A bad --

[GRIFFIN]: {Inaudible.}

UNKNOWN SPEAKER: -- a bad, bad, situation.

[GRIFFIN]: Man, I know.

UNKNOWN SPEAKER: I know.  Listen to me.  A bad, bad, bad situation has happened. Okay?

[GRIFFIN]: All right.  Yeah.

UNKNOWN SPEAKER: I think when you sober up, you'll realize --

[GRIFFIN]: Yeah.  The fucking --

UNKNOWN SPEAKER: -- this here's been something --

[GRIFFIN]: No, I won't.  Who --

UNKNOWN SPEAKER: Well --

[GRIFFIN]: How can you realize the civil -- civilization of blowing somebody's brains out?

UNKNOWN SPEAKER: Well, here's --

[GRIFFIN]: I mean --

UNKNOWN SPEAKER: -- here's the deal --

[GRIFFIN]: -- what is that?

UNKNOWN SPEAKER: -- we don't --

[GRIFFIN]: That's the end.

UNKNOWN SPEAKER: -- we don't --

| | |
|---|---|
| [GRIFFIN]: | That's the end of times. |
| UNKNOWN SPEAKER: | We don't -- we don't -- well, right now we cannot take your statement. We don't -- we haven't read you your rights -- |
| [GRIFFIN]: | I know. |
| UNKNOWN SPEAKER: | [A]nd {inaudible} I'm not asking you any questions. So anything you use -- you say at this time -- you're not being asked any questions; you're voluntary giving information that -- that -- it would be best that you don't. The only thing we need to do right now is we need -- I'm assuming we need to get him dressed out -- |
| [GRIFFIN]: | That guy needed to die -- |
| UNKNOWN SPEAKER: | Okay. |
| [GRIFFIN]: | -- and I killed him. |

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based upon the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). We review the trial court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

In *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510, we explained that a suspect's spontaneous statement while in police custody is admissible, and it is irrelevant whether the

statement was made before or after *Miranda* warnings because a spontaneous statement is not compelled or the result of the coercion under the Fifth Amendment's privilege against self-incrimination. When this court determines whether a defendant's custodial statement was spontaneous, we focus on whether it was made in the context of a police interrogation, meaning direct or indirect questioning put to the defendant by the police with the purpose of eliciting a statement from the defendant. *Stone v. State*, 321 Ark. 46, 900 S.W.2d 515 (1995).

Here, the record speaks for itself. The officers repeatedly instructed Griffin to cease talking and informed him numerous times that they were not taking his statement. Based on the totality of the circumstances before us, we cannot say that the circuit court clearly erred in denying Griffin's motion to suppress. Therefore, based upon the record before us and our standard of review, we affirm the circuit court.

## II. *January 13 to January 16*

For his second point on appeal, Griffin argues that the circuit court erred by limiting French's testimony to the events that occurred on the afternoon of January 16, 2013. Griffin sought to elicit testimony describing the victim's and Griffin's activities from January 13, 2013, after the victim arrived at French and Griffin's residence, to the time of the shooting on January 16, 2013. Griffin sought this testimony to demonstrate the human element of the crime scene; to attempt to show the common conduct between Griffin and the victim; and to provide the reason and basis for the incident. In response, the State contends that we

SLIP OPINION

should decline to consider Griffin's argument because Griffin failed to proffer the evidence he sought to have admitted.

Here, based on the record before us, Griffin failed to proffer the excluded evidence to the circuit court. When evidence is excluded by the circuit court, the party challenging that decision must make a proffer of the excluded evidence at trial so that this court can review the decision, unless the substance of the evidence is apparent from the context. *Arnett v. State*, 353 Ark. 165, 173, 122 S.W.3d 484, 489 (2003) (citing *Thomas v. State*, 349 Ark. 447, 79 S.W.3d 347 (2002)). Thus, we hold that, without the proffer, Griffin has failed to preserve his argument regarding the evidence he sought to admit, and we affirm the circuit court on this point.

## III. *Intoxication*

For his third point on appeal, Griffin argues that the circuit court failed to adequately consider his intoxication as a mitigating factor during sentencing. Griffin takes issue with the circuit court's ruling during the pronouncement of Griffin's sentence that "voluntary intoxication was not a defense to this crime." Griffin contends that the circuit court's ruling demonstrates that the circuit court failed to consider his intoxication as an appropriate mitigating factor.

In announcing Griffin's sentence, the circuit court stated the following regarding Griffin's intoxication:

> The defense here did the best they could with what they had. I took their defense to take two points, so to speak.

11

The first idea is that somehow Mr. Griffin was so intoxicated that he really can't be held responsible for some of what he did or that it had a factor or some explanation for what he did. And I have no doubt that Mr. Griffin was intoxicated to some degree.

I don't believe from everything I have seen [in] this case that he was so intoxicated that he doesn't remember what happened. I don't believe him when he says that to me or when he testifies to that, or that he was so intoxicated he did not know what he was doing that night.

The police testified that: He obeyed their commands immediately after the event happened; and when they were at the scene of the house that he walked to the car; that he stated that "I'm coming out, don't shoot," when they were talking to him and before the arrest.

Then at the booking room -- I have reviewed that film and that transcript several times for lots of different reasons. And I don't believe when I look at that video that he was intoxicated to the point that he wants me to believe when he testifies here in court today.

In fact, he in the video, he states why he did this. And I'm going to leave out the cursing, but he says, "I've been there with this child and with his mother. Thank you. I've been with here -- I been with this mother and with this child for a long time. He's never there. He has no reason to be there. He's a long-term felon. He's a sorry" -- expletive -- "Yes, I killed him. I drank too much, and I killed him. I did. He is a sorry SOB. He does not deserve to live, and I killed him" [sic].

In the end it's a very cogent description of what he was thinking and why he did this.

And in addition, the case law and statutes clearly tell us that a voluntary intoxication such as this case is not a defense in a criminal offense like this.

During sentencing, "[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance." *Hill v. State*, 331 Ark. 312, 317, 962 S.W.2d 762, 765 (1998) (quoting *Bowen v. State*, 322 Ark. 483, 497, 911 S.W.2d 555, 561 (1995)). The jury

12

alone determines what weight to give the evidence, and may reject it or accept all or any part of it they believe to be true. *Robertson v. State*, 304 Ark. 332, 802 S.W.2d 920 (1991). In *Marshall v. State*, we explained that when sentencing is by the court, as was in this case:

> Ark. Code Ann. § 16-97-102 (Supp. 1999) provides that "when either party requests to present evidence relevant to sentencing, the court shall hear or receive such evidence and any rebuttal by the opposing party. . . ." *Id.* Evidence relevant to sentencing may include, but is not limited to, prior convictions of the defendant, victim-impact evidence or statements, relevant character evidence and evidence of aggravating and mitigating circumstance. Ark. Code Ann. § 16-97-103 (Supp. 1999). In sum, it is anticipated that the trial judge, when sitting as the sentencing body, will accept all relevant evidence on the question of sentencing. *Id.* It is presumed that a trial judge will only consider competent evidence. *Clinkscale v. State*, 269 Ark. 324, 602 S.W.2d 618 (1980). This presumption can be overcome only when there is an indication that the judge gave some consideration to inadmissible evidence. *Id.*

342 Ark. 172, 175, 27 S.W.3d 392, 394 (2000).

Here, the record demonstrates that the circuit court considered Griffin's intoxication. Acting as the finder of fact, the circuit court clearly considered Griffin's intoxication but determined that it was not a mitigating factor, which the circuit court was free to do. Further, the following aggravating factors supported the imposition of a life sentence: Griffin obtained a firearm in violation of a previous order of protection; Stewart was not in an aggressive posture, but was sitting on the couch and bending over to put on his shoes when he was shot in the back of the head; and Griffin committed the murder in the presence of Stewart's minor son. Thus, despite Griffin's argument to the contrary, the circuit court considered his intoxication, as evidenced by the statements made by the circuit court during its pronouncement of Griffin's sentence, but ultimately rejected his intoxication as a mitigating

circumstance.  Accordingly, we affirm on this point.

Pursuant to Arkansas Supreme Court Rule 4-3(i), the record has been reviewed for all objections, motions, and requests that were decided adversely to Griffin, and no prejudicial error has been found.

Affirmed.

Special Justice M. DARREN O'QUINN joins in this opinion.

DANIELSON, J., not participating.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *Joseph Karl Luebke*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.