Cite as 2020 Ark. App. 157

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CR–19–253

|  |  |
|---|---|
| JOHN ELLIS JOHNSON<br><br><br>V.<br><br>STATE OF ARKANSAS | **Opinion Delivered:** March 4, 2020 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION [NO. 60CR-16-1976] |
| APPELLEE | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

John Johnson was convicted by a Pulaski County jury of second-degree murder and first-degree battery, each with a corresponding firearm enhancement. He was sentenced as a habitual offender to an aggregate term of sixty years for the murder and battery convictions as well as an additional ten years' imprisonment on each firearm-enhancement count to be run consecutively.[1] Johnson appeals his convictions, arguing that the trial court abused its discretion in (1) denying his motion to sever; (2) finding one of the witnesses to be unavailable and admitting the witness's prior sworn testimony; and (3) denying his motion to suppress his custodial statement to police.[2] We affirm.

---

[1]He was also fined $15,000.

[2]Johnson does not challenge the sufficiency of the evidence to support his convictions.

### I. *Motion to Sever*

Johnson was originally charged with first-degree murder, first-degree battery, and being a felon in possession of a firearm.[3] The State joined all three charges in one information. Pursuant to Arkansas Rule of Criminal Procedure 22.2, Johnson filed a motion to have all three charges severed. The trial court granted his motion to sever the felon-in-possession-of-a-firearm charge but denied the severance on the other charges. Johnson argues that the trial court erred in failing to sever the murder and battery charges.

Arkansas Rule of Criminal Procedure 22.2(a) provides:

> Whenever two (2) or more offenses have been joined for trial solely on the ground that they are of the same or similar character and they are not part of a single scheme or plan, the defendant shall have a right to a severance of the offenses.

Ark. R. Crim. P. 22.2(a) (2019). Johnson argued, both to the trial court and on appeal, that he has a right to a severance under Rule 22.2(a) because the murder and battery charges were joined solely on the ground that they are of the same or similar character. *Harrison v. State*, 2017 Ark. App. 580, at 6, 533 S.W.3d 146, 150. Granted, Rule 22.2(a) does require a severance when two or more charges have been joined *solely* on the ground that they are of the same or similar character; however, the rule allows a trial court to deny the severance if the two offenses were part of a single scheme or plan or if both offenses require the same evidence. The trial court has the discretion to grant or refuse a request to sever, and this court will not reverse a severance decision absent an abuse of that discretion. *Turner v. State*,

---

[3]Johnson was ultimately convicted of the lesser-included offense of second-degree murder, and the felon-in-possession-of-a-firearm charge was nolle prossed.

2011 Ark. 111, at 3–4, 380 S.W.3d 400, 402 (citing *Dillard v. State*, 333 Ark. 418, 423, 971 S.W.2d 764, 766 (1998); *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996)).

Here, the trial court found that the murder and battery offenses were part of a single scheme or plan or were so factually intertwined as to require the same evidence to be presented in both cases if severance were granted. We are not persuaded by Johnson's arguments that the trial court abused its discretion in reaching this conclusion.

In determining whether there was a single scheme or plan, the court must consider several factors: (1) Would the "same body of evidence be offered to prove each offense" that is alleged to make up the single scheme or plan? *Turner*, 2011 Ark. 111, at 6, 380 S.W.3d at 403 (citing *White v. State*, 370 Ark. 284, 291, 259 S.W.3d 410, 415 (2007)); (2) Did the offenses arise from the same conduct or a "series of acts connected together"? *Id.*, 380 S.W.3d at 403–04 (citing *Holsombach v. State*, 368 Ark. 415, 426, 246 S.W.3d 871, 879 (2007)); and (3) Are there considerations of closeness in proximity and time between the offenses? *Id.*, 380 S.W.3d at 404 (citing *Garner v. State*, 355 Ark. 82, 94, 131 S.W.3d 734, 742 (2003)). With these considerations in mind, we now review the evidence before the trial court in connection therewith.

On the evening of April 16, 2016, Johnson met up with Keith Williams to engage in a drug deal. At 2:00 a.m. on April 17, Johnson and Williams were seen together. Approximately six and a half hours later, around 8:30 a.m., Williams's dead body was discovered under a tree in an empty lot. Johnson admitted that he had been with Williams and that he had dropped him off approximately 328 feet from where his dead body was

3

found. Williams died as a result of three gunshot wounds to his legs. Law enforcement found three 9mm shell casings next to a pool of Williams's blood.

Approximately seven and a half hours after Williams's body had been found, James Washington was standing outside an apartment building when a man walked up to him. The man asked Washington if he was from southwest Little Rock and stated that he knew one of Washington's "home boys."[4] The man then fired three shots at Washington, two of which hit his legs. Washington was able to identify Johnson as the man who shot him. Law enforcement officers collected casings from the scene that matched the casings from the Williams homicide, and forensics indicated that the casings from both crime scenes were fired from the same gun.

We find no abuse of discretion in the court's determination that the evidence presented established that the acts giving rise to the murder and battery charges constituted a single scheme or plan. The trial court heard that both incidents occurred on the same day and less than ten miles apart, that bullet casings collected revealed that both victims were shot with the same weapon, that both crimes were committed in the same manner—three shots fired at the victims' legs, that Johnson was the last person known to have seen Williams alive, and that Johnson was identified by Washington as the person who had shot him. This evidence demonstrates that the two offenses are factually intertwined. *See Gillie v. State*, 305 Ark. 296, 305, 808 S.W.3d 320, 324 (1991) (affirming the denial of a motion to sever capital-murder and aggravated-robbery charges because the facts were intertwined and

---

[4]Williams was also from southwest Little Rock.

4

showed that the offenses were a series of acts connected together and occurred within an hour of each other; evidence found at both scenes was traced back to the gun found on the appellant upon his arrest). Thus, the trial court did not abuse its discretion in denying the motion to sever.

## II. *Witness Unavailability*

In his second point on appeal, Johnson challenges the trial court's ruling concerning the unavailability of a witness and the admission of the witness's prior sworn testimony into evidence. We review a trial court's evidentiary rulings under an abuse-of-discretion standard. *Darr v. Billeaudeau*, 2018 Ark. App. 16, 541 S.W.3d 460. Here, we find no abuse of discretion.

James Washington was the victim of the battery. He cooperated with law enforcement in the investigation of the battery offense including participating in a photo-identification process whereby he was able to identify Johnson as the person who had shot him. When Johnson filed a motion to suppress the photo identification, Washington again cooperated with the prosecution. He appeared and offered testimony under oath at the suppression hearing, where he was subject to cross-examination from Johnson's trial counsel.

On the morning of trial, the State advised that it could not locate James Washington and believed that he had left the state despite having been subpoenaed for trial. The State then sought to have his testimony from the suppression hearing admitted at trial. Johnson opposed the request, arguing that Washington was not "unavailable" for purposes of admitting his prior testimony because the State had not properly subpoenaed him and that

5

the State had not sufficiently attempted to compel his attendance at trial. He further argued that Washington had not been fully cross-examined at the suppression hearing; thus, his prior testimony should not be admitted.[5] The court found the witness to be unavailable and admitted his prior testimony.

Johnson argues that the trial court erred in finding that Washington was unavailable. A witness is unavailable when absent from trial, and the proponent of the statement has been unable to procure the witness's attendance by process or other reasonable means. Ark. R. Evid. 804(a)(5). Johnson contends that Washington had not been properly subpoenaed and that the State failed to act with due diligence to compel his attendance at trial. We will address his arguments in that order.

Johnson argues that Washington was not properly subpoenaed because he was not provided the requisite witness fee. The court heard testimony from Investigator Patrick Raper concerning the subpoena in question. Raper telephonically served James Washington with a subpoena for trial on August 31, 2018, and the subpoena was filed with the court on September 5, 2018. Because Washington was served telephonically, he was not tendered a witness fee upon service. Johnson contends that this failure to tender the witness fee

---

[5]This argument has been abandoned on appeal. Instead, Johnson argues only that Washington should not have been considered unavailable because he was not properly subpoenaed and because the State failed to exercise due diligence in procuring his attendance.

invalidates the subpoena. We disagree. Rule 45(d) of the Arkansas Rules of Civil Procedure[6]

provides in part:

> The subpoena must be accompanied by a tender of a witness fee calculated at the rate of $30.00 per day for attendance and $0.25 per mile for travel from the witness' residence to the place of the trial or hearing. In the event of telephone service of a subpoena by a sheriff or his deputy, the party who caused the witness to be subpoenaed shall tender the fee prior to or at the time of the witness' appearance at the trial or hearing.

Ark. R. Civ. P. 45(d).

Here, Washington was served telephonically, and the rule allows for the fee to be tendered when the witness appears at trial. Thus, the State was not required to tender the fee until Washington appeared for trial. Accordingly, the State was in compliance with the rules, and Washington was properly subpoenaed.

Johnson next contends that the State should have done more to compel Washington's attendance. The State, as the party offering Washington's testimony under these provisions, has the burden of proving that the witness is unavailable and that it has made good-faith efforts to procure the witness. *Register v. State*, 313 Ark. 426, 428, 855 S.W.2d 320, 322 (1993). A good-faith effort does not require that every possible avenue for locating a witness be employed. *Vick v. State*, 314 Ark. 618, 623, 863 S.W.2d 820, 823 (1993). The trial court has some discretion in deciding if a good-faith effort was made and whether a witness cannot be procured by process or other "reasonable means." *Spears v. State Farm Fire & Cas. Ins.*, 291 Ark. 465, 471, 725 S.W.2d 835, 839 (1987).

---

[6]This rule applies in criminal cases as well. *See Swanson v. State*, 308 Ark. 28, 823 S.W.2d 812 (1992) (applying Rule 45(d) in a criminal context when the subpoena was untimely and was not issued with leave of the court).

7

Here, the trial court did not abuse its discretion in determining that Washington was unavailable. The State presented the following evidence to support its good-faith efforts to compel his attendance at trial.

Raper testified that he contacted Washington approximately two weeks prior to trial, that he had picked him up and transported him to speak with prosecutors on the case, and that Washington had been cooperative at the time. After the meeting with prosecutors, Raper asked Washington to give him a call a day or two before trial to finalize travel arrangements as Raper was going to transport Washington to trial. When he had not heard from Washington the afternoon before trial, Raper attempted to locate him by means of phone calls and text messaging and through various law enforcement and judicial databases. Raper also made attempts to contact Washington through relatives, his employer, his landlord, and his neighbors. Raper concluded that Washington had left the state and was absconding from his parole.

We find no abuse of the trial court's discretion in finding Washington unavailable as a witness or in admitting his prior sworn testimony into evidence at trial under Rule 804(b)(1) of the Arkansas Rules of Evidence.[7] The State subpoenaed the witness well before trial. The prosecutor's office had been in contact with Washington just a few weeks before

---

[7]Rule 804(b)(1) of the Arkansas Rules of Evidence provides that the following is not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

trial, and Washington was cooperating at the time. The State was not aware until the afternoon before trial that Washington had left the jurisdiction or that he did not intend to comply with the subpoena. Once it was determined that Washington was missing, the State actively tried to locate Washington to secure his attendance at trial. Under these facts, we cannot say that the trial court abused its discretion.

### III. *Statement Suppression*

Finally, Johnson argues that the trial court erred in denying his motion to suppress a statement he made to the police. At the suppression hearing, the trial court heard evidence that Johnson was removed from lockup to be questioned by Detectives Oncken and McDaniel in connection with the shootings. Clearly, Johnson was in custody when the detectives sought to question him. Both detectives testified that they informed Johnson that they intended to question him concerning the shootings. The court heard conflicting evidence as to whether Johnson had been Mirandized, but both detectives reported that no questions were posed to Johnson because he exercised his right to not be interrogated. Despite having chosen not to be interrogated, Johnson made the following statement concerning Washington: "[H]e was only the end and not what started the chain of events . . . it started higher than him." Thus, Johnson's statement suggested that the shootings might be related.

Johnson contends that he was in custody when he made the statement, that he was responding to comments by Detective Oncken, that his statements were not voluntary or spontaneous, and that he had not been Mirandized. Accordingly, his statement should have been suppressed.

9

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based upon the totality of the circumstances. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). We review the trial court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

In *Sweet v. State*, 2011 Ark. 20, 370 S.W.3d 510, our supreme court explained that a suspect's spontaneous statement while in police custody is admissible, and it is irrelevant whether the statement was made before or after *Miranda* warnings because a spontaneous statement is not compelled or the result of coercion under the Fifth Amendment's privilege against self-incrimination. When this court determines whether a defendant's custodial statement was spontaneous, we focus on whether it was made in the context of a police interrogation, meaning direct or indirect questioning put to the defendant by the police with the purpose of eliciting a statement from the defendant. *See Stone v. State*, 321 Ark. 46, 900 S.W.2d 515 (1995).

Here, the court found that Johnson's statement was spontaneous. Johnson argues that his statement was not spontaneous because he was not provided *Miranda* warnings. Admittedly, there is some conflict in the testimony concerning *Miranda* warnings. However, our supreme court has held that if the statement was spontaneous, it is irrelevant whether the statement was made before or after *Miranda* warnings had been given. *Sweet, supra.*

Furthermore, both detectives testified that Johnson's statement was not the result of any questioning, either directly or indirectly, and that they were not attempting to elicit a response at that time. The court found their testimony to be credible. The credibility of the witnesses who testify to the circumstances surrounding the defendant's custodial statement is for the trial court to determine. *Porchia v. State*, 306 Ark. 443, 815 S.W.2d 926 (1992); *Smith v. State*, 286 Ark. 247, 691 S.W.2d 154 (1985). Under these facts, there was sufficient evidence from which the trial court could find the statement to have been spontaneous.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, and *Dominique King*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.