Cite as 2020 Ark. App. 527

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-19-648

| | | |
|---|---|---|
| RONTERRIO MAYO | | **Opinion Delivered** November 18, 2020 |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-19-34] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHRIS E WILLIAMS, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

This is an appeal filed on behalf of Ronterrio Mayo following his conviction for possessing a prohibited article (a cell phone) while in the custody of a correctional facility. *See* Ark. Code Ann. § 5-54-119 (Supp. 2019). Mayo's counsel initially filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Arkansas Supreme Court Rule 4-3(k) (2019), along with a motion to be relieved as counsel. We denied the motion to be relieved and ordered rebriefing. *Mayo v. State*, 2020 Ark. App. 333. The appeal returns to us after counsel rebriefed the appeal in merit format. We affirm.

The focus of this appeal is the denial of Mayo's pretrial motion to suppress. A cell phone was found hidden in the wall of a jail cell that was assigned to Reginald Winston. Mayo gave two statements to correctional officers in which he said that the phone was not Winston's, and instead, he (Mayo) was in possession of the cell phone. Mayo filed a pretrial motion to suppress these two statements, arguing that he gave those statements without

being advised of his *Miranda* rights and without being advised that there would be any type of criminal prosecution.

The first statement was taken by Corporal Christopher Tiernan, a prison officer who recalled that Mayo had been taken from Winston's cell area into solitary confinement, where Tiernan directed Mayo to give a statement. Tiernan did not remember if he had advised Mayo of any consequences that might come from giving a statement, and he did not give *Miranda* warnings to Mayo. Tiernan said that if he did advise Mayo of any consequences, it would have been that "they're starting to give free world charges for them." Mayo handwrote on a form, "The phone did not belong to R. Winston, it was in my possession."

The second statement was taken by Sergeant Charlene Ashcraft, a prison officer who was preparing a disciplinary proceeding against inmate Winston. According to Ashcraft, Winston had called Mayo as a witness, and she "asked him if he wanted to make a statement," although she could not recall if she advised Mayo that he could refuse to make a statement. Mayo handwrote on a form that the phone was not Winston's, that "it was mine in my possession," and Winston "didn't have anything to do with it." The form had a disclaimer in type at the bottom, reciting that the statement was made freely, under no duress, and without undue coercion. Mayo signed and dated the form. Ashcraft admittedly did not give Mayo any *Miranda* warnings, but she denied interrogating Mayo and added, "I'm not the police."

In a third statement that he gave to the state police months later, after Mayo had been given *Miranda* warnings, Mayo admitted that he had used the phone but that it was not his. Mayo did not move to suppress the statement that he gave to the state police special

2

agent, and the agent later testified at trial that Mayo "took blame for having the phone because the other inmate was getting out. And that he had been using the phone."

Mayo did not testify at the pretrial hearing. Mayo argued that his first two statements should have been suppressed because they were not preceded by *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The circuit court denied the motion to suppress. When we review the denial of a suppression motion, this court makes an independent examination of the evidence based on the totality of the circumstances, and we will not reverse the circuit court's decision unless it is clearly against the preponderance of the evidence. *Fricks v. State*, 2016 Ark. App. 415, 501 S.W.3d 853.

*Miranda* warnings are required only in the context of a custodial interrogation. *See Hall v. State*, 361 Ark. 379, 206 S.W.3d 830 (2005). Counsel asserts that Mayo was "in custody" and subjected to "interrogation" for purposes of *Miranda* when he made the statements to the correctional-facility officers.

In *Howes v. Fields*, 565 U.S. 499 (2012), the Supreme Court examined what it meant to be "in custody" for purposes of *Miranda* when the person questioned is an inmate. The Court explained that in *Miranda* case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. *Id.* The initial step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave. *Id.* In order to determine how a suspect would have gauged his freedom of movement, courts must examine all the circumstances surrounding the interrogation. *Id.* Relevant factors include the location of the questioning, its duration,

statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning. *Id.* Not all restraints on freedom of movement amount to custody for purposes of *Miranda*. *Id.* The freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody. *Id.* Imprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*. *Id.* at 511. Furthermore, the Supreme Court in *Howes* held that isolation from the general prison population is often in the best interest of the interviewee and, in any event, does not suggest on its own the atmosphere of coercion that concerned the Court in *Miranda*. *Id.* at 513.

Likewise, the term "interrogation" under *Miranda* is a term of art. "Interrogation" refers not only to express questioning but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Pennsylvania v. Muniz*, 496 U.S. 582 (1990). The test is dependent on the objective circumstances and what a reasonable person in that person's situation would have understood under those circumstances. *Id.* Our appellate courts have explained that a police "interrogation" means direct or indirect questioning put to the defendant by the police with the purpose of eliciting a statement from the defendant. *See Griffin v. State*, 2015 Ark. 340, 470 S.W.3d 676; *Johnson v. State*, 2020 Ark. App. 157, 596 S.W.3d 83.

In light of this legal framework, we have conducted a de novo review and concluded that Mayo has failed to establish reversible error in the circuit court's denial of his motion

to suppress. In particular, we hold that the circuit court did not clearly err in denying the motion to suppress Mayo's statement to Ashcraft.

Ashcraft did not subject Mayo to "interrogation" as defined for purposes of *Miranda*. Thus, Mayo was not entitled to *Miranda* warnings (even if we assume, without deciding, that Mayo was in "custody" for purposes of *Miranda*), and the circuit court did not clearly err in denying the motion to suppress his statement to Ashcraft. To explain, Mayo's interaction with Ashcraft was prompted by her processing the disciplinary proceeding[1] that had been initiated against inmate Winston. Ashcraft asked Mayo if he wanted to make a statement, having been called by Winston as a witness in Winston's disciplinary proceeding. We conclude after our de novo review that Ashcraft's asking Mayo if he wanted to make a statement did not equate to "interrogation" as it is defined in the *Miranda* context. *See, e.g.*, *Arnett v. State*, 353 Ark. 165, 122 S.W.3d 484 (2003) (holding that a confession made in response to a police officer asking Arnett "what's up?" was admissible because it was not made in the context of a police interrogation).

We need not decide whether the circuit court clearly erred in denying the motion to suppress Mayo's statement to Tiernan. The remaining evidence against Mayo, absent his statement to Tiernan, overwhelmingly established Mayo's guilt, so any error in admitting Mayo's statement to Tiernan was harmless beyond a reasonable doubt. To conclude that a

---

[1]Our supreme court has held that Arkansas Department of Correction (ADC) prison-disciplinary-action policies do not create a liberty interest to which due process can attach but, instead, must be evaluated in relation to the ordinary incidents of prison life. *Muntaqim v. Kelley*, 2019 Ark. 240, 581 S.W.3d 496. ADC disciplinary proceedings do not, as a general rule, invoke procedural or substantive due process. *Swanigan v. Ark. Dep't of Corr.*, 2014 Ark. 196.

constitutional error is harmless and does not mandate reversal, the appellate court must determine beyond a reasonable doubt that the error did not contribute to the verdict. *Coleman v. State*, 2017 Ark. 218, 521 S.W.3d 483. This requires that we excise the purportedly erroneously admitted statement and determine whether the remaining evidence shows beyond a reasonable doubt that the error did not contribute to the verdict.

At trial, the jury was presented with evidence that the cell phone was found in Winston's jail cell, Mayo was present in the area of Winston's jail cell, Mayo made a statement to Ashcraft that the phone was his and in his possession, and Mayo made a subsequent statement to a state police special agent in which Mayo took blame for having and using the phone. Absent Mayo's statement to Tiernan, the evidence was overwhelming that Mayo possessed the cell phone.

Affirmed.

GRUBER, C.J., and ABRAMSON, J., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.